## COLUMBIA RIVER PACKERS ASSOCIATION, INC.
### *v.* HINTON ET AL.

No. 142. Argued January 12, 13, 1942.—Decided February 2, 1942.

*Messrs. Jay Bowerman* and *Ralph E. Moody* for petitioner.

*Mr. Ben Anderson,* with whom *Messrs. Lee Pressman, Joseph Kovner,* and *Anthony Wayne Smith* were on the brief, for respondents.

MR. JUSTICE BLACK delivered the opinion of the Court.

The petitioner filed a bill for an injunction charging that the respondents attempted to monopolize the fish industry in Oregon, Washington, and Alaska, in violation of the Sherman Act. 26 Stat. 209. The Norris-La-

Guardia Act declares that no federal court shall, except under certain specified circumstances, have jurisdiction to issue an injunction in any case which involves or grows out of a "labor dispute." [1] The jurisdictional requirements were not present here. But the District Court held that, since this case did not involve or grow out of a "labor dispute," these requirements were irrelevant; and, finding that the respondents had violated the Sherman Act to the injury of the petitioner, issued the injunction sought. 34 F. Supp. 970. The Circuit Court of Appeals reversed, holding that a "labor dispute" was involved and that the District Court was therefore without jurisdiction to enjoin. 117 F. 2d 310. To review this question, we granted certiorari. 314 U. S. 600.

The petitioner has plants for processing and canning fish in Oregon, Washington, and Alaska. It distributes its products in interstate and foreign commerce. Its supply of fish chiefly depends upon its ability to purchase from independent fishermen. The dispute here arose from a controversy about the terms and conditions under which the respondents would sell fish to the petitioner.

The respondents are the Pacific Coast Fishermen's Union, its officers and members, [2] and two individuals who, like the petitioner, process and sell fish. Although affiliated with the C. I. O., the Union is primarily a fishermen's association, composed of fishermen who conduct their operations in the Pacific Ocean and navigable streams in Washington and Oregon and some of their employees. The fishermen own or lease fishing boats, ranging in value from $100 to $15,000, and carry on their business as inde-

---

[1] ". . . no court of the United States . . . shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this Act. . . ." 47 Stat. 70.

[2] Two of the respondents, although members of the Union, are not fishermen. They are buyers for processors.

pendent entrepreneurs, uncontrolled by the petitioner or other processors.

The Union acts as a collective bargaining agency in the sale of fish caught by its members. Its constitution and by-laws provide that "Union members shall not deliver catches outside of Union agreements," and in its contracts of sale it requires an agreement by the buyer not to purchase fish from nonmembers of the Union. The Union's demand that the petitioner assent to such an agreement precipitated the present controversy. Upon the petitioner's refusal, the Union induced its members to refrain from selling fish to the petitioner, and since the Union's control of the fish supply is extensive, the petitioner was unable to obtain the fish it needed to carry on its business.

We think that the court below was in error in holding this controversy a "labor dispute" within the meaning of the Norris-LaGuardia Act. That a dispute among businessmen over the terms of a contract for the sale of fish is something different from a "controversy concerning terms or conditions of employment, or concerning the association . . . of persons . . . seeking to arrange terms or conditions of employment" calls for no extended discussion. This definition and the stated public policy of the Act—aid to "the individual unorganized worker . . . commonly helpless . . . to obtain acceptable terms and conditions of employment" and protection of the worker "from the interference, restraint, or coercion of employers of labor"—make it clear that the attention of Congress was focussed upon disputes affecting the employer-employee relationship, and that the Act was not intended to have application to disputes over the sale of commodities.[3]

---

[3] Cf. § 6 of the Clayton Act: ". . .. the labor of a human being is not a commodity or article of commerce." 38 Stat. 731. The Norris-LaGuardia Act, manifesting "the purpose of the Congress further to extend the prohibition of [§ 20 of] the Clayton Act," *New Negro*

· 146

We recognize that by the terms of the statute there may be a "labor dispute" where the disputants do not stand in the proximate relation of employer and employee. But the statutory classification,[4] however broad, of parties and circumstances to which a "labor dispute" may

*Alliance* v. *Grocery Co.*, 303 U. S. 552, 562, cannot be taken as having erased the distinctions between an association of commodity sellers and an association of employees. Specific recognition by Congress of associations of fishermen as sellers of commodities has been given in an act "Authorizing associations of producers of aquatic products." 48 Stat. 1213.

[4] Section 13 of the Act provides:

"When used in this Act, and for the purposes of this Act—

"(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or (3) between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a 'labor dispute' (as hereinafter defined) of 'persons participating or interested' therein (as hereinafter defined).

"(b) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, trade, craft, or occupation in which such dispute occurs, or has a direct or indirect interest therein, or is a member, officer, or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft, or occupation.

"(c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." 47 Stat. 73.

relate does not expand the application of the Act to include controversies upon which the employer-employee relationship has no bearing. Our decisions in *New Negro Alliance* v. *Grocery Co.*, 303 U. S. 552, and *Milk Wagon Drivers' Union* v. *Lake Valley Co.*, 311 U. S. 91, give no support to the respondents' contrary contention, for in both cases the employer-employee relationship was the matrix of the controversy.

The controversy here is altogether between fish sellers and fish buyers. The sellers are not employees of the petitioners or of any other employer, nor do they seek to be. On the contrary, their desire is to continue to operate as independent businessmen, free from such controls as an employer might exercise. That some of the fishermen have a small number of employees of their own, who are also members of the Union, does not alter the situation. For, the dispute here, relating solely to the sale of fish, does not place in controversy the wages or hours, or other terms and conditions of employment, of these employees.

We are asked to consider other contentions pressed by the respondents, which it is said would support the reversal below. But the Circuit Court neither canvassed nor passed upon these contentions. It will be free to do so upon remand.

*Reversed.*

Mr. Justice Roberts and Mr. Justice Douglas took no part in the consideration or decision of this case.