**ALLEN BRADLEY CO. et al. v. LOCAL UNION NO. 3, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, et al.**

District Court, S .D. New York.
June 10, 1943.

[2] "A Remedy for Corporate Abuse", 40 Col.L.Rev. 221, 235.

See, also, 41 F.Supp. 727.

McLanahan, Merritt & Ingraham, of New York City (Walter Gordon Merritt, Burgess Osterhout, and Hyler Connell, all of New York City, of counsel), for plaintiffs.

Harold Stern, of New York City, for defendants.

CAFFEY, District Judge.

The Court: My discussion will not be long. At this time I shall not attempt to justify or reason out various views I have adopted. What I shall try to do now is, in substance, merely to indicate quite briefly what I am holding.

There are three law questions. I shall talk about those. Then I shall take up in order and pass on the conclusions of law contained in the report. This will be in the usual way in which we have handled such matters. After I have disposed of those I shall give some general directions.

I shall not go into the matter of whether or not the findings of fact are correct. I accept them as heretofore modified. For the purpose of passing on the conclusions of law, I shall assume that the findings of fact as already modified are correct. I believe that if the findings of fact be accepted, they establish that the anti-trust laws have been violated in the way the amended complaint charges. In saying this, for the moment I ignore the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq. Later I shall deal with that.

Though at the present stage I shall not go into whether the findings of fact are correct, I think it indisputable that, if they be right, they show that there has been a violation of the anti-trust laws such as the plaintiffs claim.

My discussion of the law questions, therefore, will be on the assumption I have explained.

The first inquiry, in substance, is: Does the Norris-LaGuardia Act prohibit the issuance of an injunction?

As counsel apparently agree, and as I think is manifest, the answer to the inquiry turns exclusively on whether the violation involved or grew out of a labor dispute, as that term is employed in the statute. Otherwise put, the problem is whether the controversy involved or grew out of a labor dispute or whether the issuance of an injunction would be contrary to the public policy laid down by the Act.

The essence of the offense alleged is that there was a conspiracy between three groups (Local No. 3, the New York City manufacturers and the New York City local contractors, as alleged) with respect to electrical products unreasonably to restrain interstate trade in certain of those articles.

As I see the findings of fact, and as I see the evidence, neither the commission nor the conduct of the offense was affected by a controversy which grew out of or involved the employer-employee relationship. I am conscious that, in thus phrasing my statement, I am resting my decision on a somewhat different ground, or at least I am expressing the ground in a somewhat different way, from that followed or adopted by counsel on either side; also that possibly I read the pertinent court opinions somewhat differently from counsel.

At any rate, if we accept the findings of fact, I believe it clear that the offense was not affected or instigated or promoted by a controversy which sprang from or involved the employer-employee relationship. I believe it clear also that, if so, it follows that the violation did not grow out of nor was it contributed to by a labor dispute within the meaning, nor would the awarding of an injunction infringe the public policy, of the Norris-LaGuardia Act. In that situation, the proposition that there was no such labor dispute seems to me squarely sustained by Columbia River Packers Association v. Hinton, 315 U.S. 143, 62 S.Ct. 520, 86 L.Ed. 750. I shall not go fully into the case cited, but I shall refer to or quote from it to some extent.

The plaintiff was a processor of fish. For use in processing, the plaintiff bought fish from a labor union as well as from independents. It distributed its products in interstate and foreign commerce. The complaint charged that the defendants had attempted to monopolize the fish industry in violation of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15, note, and sought an injunction.

The defendants were fishermen and members of a union which sold fish. The dispute dealt with in the case was or arose from a controversy with respect to the terms and conditions under which the defendants would sell fish to the plaintiff. As a condition to selling, the members of the union required that buyers stipulate that they would not buy from non-members of the union.

Though the controversy was about the terms and conditions on which the defendants would sell fish to the plaintiff, as I see it there is not the slightest difference in the legal principle governing whether the complainant was a buyer or was a seller.

Among other things the court made these statements:

"The dispute here arose from a controversy about the terms and conditions under which the respondents [defendants] would sell fish to the petitioner [plaintiff]". **315** U.S. at page 144, 62 S.Ct. at page 521, 86 L.Ed. 750.

"* * * a dispute among businessmen over the terms of a contract for the sale of fish is something different from a 'controversy concerning terms or conditions of employment, or concerning the association * * * of persons * * * seeking to arrange terms or conditions of employment' * * *. This definition [section 13 of the Norris-LaGuardia Act] and the stated public policy [section 2] of the Act * * * make it clear that the attention of Congress was focussed upon disputes affecting the employer-employee relationship, and that the Act was not intended to have application to disputes over the sale of commodities". 315 U.S. at page 145, 62 S.Ct. at page 521, 86 L.Ed. 750.

"* * * the statutory classification, however broad, * * * does not expand the application of the Act to include controversies upon which the employer-employee relationship has no bearing. Our decisions in New Negro Alliance **v.** Sanitary Grocery Co., 303 U.S. 552, 304 U. S. 542, 58 S.Ct. 703, 82 L.Ed. 1012, and Milk Wagon Drivers' Union v. Lake Valley Farm Products, 311 U.S. 91, 61 S.Ct. 122, 85 L.Ed. 63, give no support to the respondents' contrary contention, for in both cases the employer-employee relationship was the matrix of the controversy". 315 U. S. at pages 146, 147, 63 S.Ct. at page 522, 86 L.Ed. 750.

"The controversy here is altogether between fish sellers and fish buyers. The sellers are not employees of the petitioners [buyers] or of any other employer nor do they seek to be. On the contrary, their desire is to continue to operate as independent businessmen, free from such controls as an employer might exercise. That some of the fishermen have a small number of employees of their own, who are also members of the Union, does not alter the situation. For the dispute here, relating solely to the sale of fish, does not place in controversy the wages or hours or other terms and conditions of employment of these employees." 315 U.S. at page 147, 62 S.Ct. at page 522, 86 L.Ed. 750.

I have said that I viewed the law somewhat differently from that contended for by either counsel for the plaintiffs or counsel for the defendants. That does not mean, however, that neither side relied on the case from which I have just been quoting. It was definitely relied on by the plaintiffs. Indeed, it was perhaps the chief support on this branch of the litigation invoked by their counsel. Yet, as I see it, I interpret its effect somewhat differently from the significance attributed to it in argument by either side.

The defendants count chiefly on Milk Wagon Drivers' Union v. Lake Valley Farm Products, 311 U.S. 91, 61 S.Ct. 122, 85 L.Ed. 63. They also have urged New Negro Alliance v. Sanitary Grocery Co., 303 U.S. 552, 304 U.S. 542, 58 S.Ct. 703, 82 L.Ed. 1012, as supporting them.

I consider it unnecessary to go into a discussion of those two cases, however, for the reason that in the Hinton case Mr. Justice Black himself disposed of them. He said that they were not to the contrary of what he was ruling in the Hinton case, because "in both cases [cited and commented on by the defendants during the argument in the present case as sustaining them] the employer-employee relationship was the matrix of the controversy." 315 U. S. at page 147, 62 S.Ct. at page 522, 86 L. Ed. 750. I think this is enough to show their inapplicability to and that they do not support the defendants in the case at bar.

As I understand, when the learned Justice said "the matrix of the controversy," as will be indicated by the dictionary, he meant that in the cases distinguished the employer-employee relationship was the origin or foundation of the controversy

there involved. On the other hand, in this case I do not see any possibility of maintaining the proposition that the employer-employee relationship was either the origin or the foundation of the controversy. That relationship does not even affect the instant controversy.

Many other decisions have been cited. Many of those lack clarity. Wholly apart from that feature, however, I see no occasion to go into them. I prefer to rest on the Hinton case.

I confess that when one reads all the decisions on the subject—and I have read all or most of them—they are a bit confusing. I imagine that many of them are difficult even for lawyers who practice much in labor cases to understand (and I have had little experience with such cases). I suspect that in many respects what will be the final true interpretation of the Norris-LaGuardia Act has not yet been reached. But, as I see the Hinton case, it is a decision (or at least is the most nearly applicable decision yet announced by the Supreme Court) that bears upon the injunction question presented in the instant case. Whether one agree or disagree with Mr. Justice Black, I think it must be conceded that he is clear. In fact, I have the feeling that he makes his meaning clearer than any other member of our highest court today. Accordingly I accept his opinion. It seems to me that his holding is indistinguishable and, if so, it controls me in the instant case.

That brings us to the second inquiry. That is this: May there be a declaratory judgment that the defendants have violated the anti-trust laws as charged in the amended complaint?

The contention that there may not be such a declaratory judgment is predicated exclusively on three considerations. These are as follows: (1) There is pending in this court between various of the parties to the present suit a treble damage action involving many of the issues that are also involved in the case at bar. (2) In the instant case there has been no jury trial. (3) Section 15 of Title 15 of the United States Code Annotated gives a right to a jury trial in a treble damage action. On the basis of those facts it is urged that, if there were a declaratory judgment in this equity suit that the defendants had violated the anti-trust laws in the respects alleged in the amended complaint, this would be admissible in evidence at the trial of the treble damage action and thus, to the extent that the defendants are the same and the issues are the same in both cases, such defendants would be cut off from a jury trial in the treble damage action.

In Fleitmann v. Welsbach Street Lighting Co., 240 U.S. 27, 29, 36 S.Ct. 233, 60 L. Ed. 505, the Supreme Court has settled (Mr. Justice Holmes writing) that a defendant is entitled to a jury trial in a treble damage action and hence, as is insisted, that the defendants in the instant suit who are also sued at law are entitled to a jury trial in the treble damage action.

On that account, as well as because of the value to a litigant of a jury trial, until yesterday I felt quite undecided as to what the answer to the pending question should be or as to what was my duty in regard to it. Not until I had considered the stipulation and order (both dated July 1, 1937) for the appointment of the master in this case did my doubts vanish.

In the stipulation for the reference it was agreed: "1. That this case be referred to John Kirkland Clark, Esq., of No. 72 Wall Street, New York, N. Y., as special master. to hear and determine all issues of law and fact herein, pursuant to the Equity Rules as promulgated by the Supreme Court of the United States."

In the order thereon, made (as heretofore stated) the same day, the first provision was:

"Ordered, that the above entitled case" —that is, the case at bar—"be and it hereby is referred to John Kirkland Clark, Esq., of No. 72 Wall Street, New York, N. Y., as special master to hear and determine all issues of law and fact therein and report thereon to this Court * * *."

Rule 61½, adopted in 1932, 28 U.S.C.A. § 723 Appendix (286 U.S. 571), was the equity rule applicable at the time of the stipulation and order; and is the rule which particularly was referred to in the order.

It is not to be overlooked that the stipulation and order are in this suit—and in this suit only.

Plainly, as I see it, by entering into the stipulation and consenting to the order mentioned, both sides waived the right— if they or either of them ever had a right— to a jury trial in the case at bar. Moreover, it should be observed that in the

present case no recovery of damages is sought; also that the opinion of Mr. Justice Holmes relates only to treble damage actions.

I say nothing as to the effect (if any) of the stipulation or of the order or of a judgment in this case on the treble damage action. Those are matters to be dealt with, and (as I feel) wholly for determination, by the judge sitting at the trial in that case; and, in so far as I properly can, I wish to avoid doing anything which might be said to establish the law of the case or which might influence the outcome of the treble damage action unless, of course, that be an inescapable result.

■ So far as concerns this case I consider that I am wholly without power to nullify or to deprive either party of the effect of the stipulation or of the order.

The third inquiry is whether the plaintiffs are entitled to a counsel fee.

During the course of the oral argument, I remarked that in my view this court is without power to grant such a fee in this case.

■ The treble damage section of the anti-trust laws (15 United States Code Annotated, section 15) gives to a prevailing plaintiff the right to "a reasonable attorney's fee." That relief, restricted to that purpose, is peremptory and is unequivocal. On the other hand, the court cannot properly award it except as an incident to the successful prosecution of a law action for recovery of damages based on a violation of the anti-trust laws. It was so held in Decorative Store Company v. Building Trades Council, 2d Cir., 23 F.2d 426, 428. See also Clabaugh v. Southern Wholesale Grocers Association, C.C.N.D.Ala., 181 F. 706, 708.

As I have called to your attention, it must not be forgotten that in this suit no recovery of damages at all is sought—much less is there an effort to recover treble damages.

■ So far as I know or has been pointed out to me, this court, either under the general law or under a statute or otherwise, has no power in or as an incident to an equity suit or in or as an incident to a proceeding for a declaratory judgment, to grant a counsel fee. So far as I have been able to ascertain, the limit of its power to include attorney's fees in judgments is where they are specifically provided for by statute; and there is no such statute which is applicable here.

The application, therefore, is denied.

Now I am ready to take up the conclusions of law one by one.

I will hear counsel. Are you ready?

Mr. Merritt: Shall I read them?

Mr. Merritt: (Reading): "1. This Court has, and at the time of the commencement of this action and at all times thereafter had, jurisdiction of the subject-matter of this action because the issues herein involve the interpretation, application and enforcement of the Act of Congress of July 2, 1890, entitled 'An Act to Protect Trade and Commerce against Unlawful Restraints and Monopolies,' together with acts amendatory thereof and supplementary thereto."

Mr. Stern: Your Honor, in view of your Honor's opinion, I am just going to note an objection.

The Court: Oh, yes, I understand. The purpose of my delivering it in advance was to relieve you of having to repeat objections already ruled on.

Mr. Merritt: (Reading): "2. This Court duly acquired jurisdiction of all the parties to this action."

Mr. Stern: Your Honor, I do not want to waste any time, but do I have to note my objection to each finding?

The Court: You do not, as I understand it. My understanding of the rules is that on appeal you may raise an objection to any finding or conclusion whether or not you have objected to it in the trial court at the time it was made or stated. It is the practice of many lawyers—and I think good practice, though largely for the assistance of the judge—to interpose objections if the matters objected to have not been already ruled on. Isn't that your understanding?

Mr. Merritt: That is my understanding. I shall not claim that Mr. Stern has in any way waived any rights by not entering any objection to any of these conclusions of law. (Reading): "3. The combination and conspiracy to prevent the sale and use of plaintiffs' completed products in New York City described in the foregoing Findings of Fact, and all acts in furtherance thereof, are unlawful and contrary to the laws of the United States, enacted July 2, 1890, and entitled 'An Act to Protect Trade and Commerce against Unlawful Restraints

and Monopolies' and laws amendatory thereof and supplementary thereto." Does your Honor rule?

The Court: I only rule when there is an objection. That is, on the particular finding.

Mr. Stern: May the record show this—

The Court: You object to every one of these conclusions?

Mr. Stern: Exactly, without in every case stating the objection.

The Court: That is entirely agreeable, isn't it?

Mr. Merritt: That is satisfactory. (Reading):

"4. The activities of the conspirators hereinbefore described in boycotting certain electrical equipment and materials not made by members of Local No. 3 and in requiring that certain of said equipment for use in New York City be wired and assembled by members of Local No. 3 are not legitimate labor activities falling into the sphere designated by the Supreme Court of the United States as 'licit and not illicit.'

"5. Neither the defendants nor their actions and activities above described are in this case exempt from the operation of the Act of July 2, 1890, entitled 'An Act to Protect Trade and Commerce against Unlawful Restraints and Monopolies' and laws amendatory thereof and supplementary thereto.

"6. This case does not involve or grow out of a 'labor dispute' as defined in the Norris-LaGuardia Act of March 23, 1932 (47 Stat. 70; 29 U.S.C.A. 101–115) and neither that Act nor anything therein contained deprived this Court of the right and power to grant the relief prayed for by the plaintiffs herein.

"7. No compliance with the terms of said Norris-LaGuardia Act is requisite to the issuance of any injunction herein.

"8. This Court has, and at the time of the commencement of this action and at all times thereafter had, jurisdiction to grant an injunction or issue a declaratory judgment herein as prayed for by the plaintiffs."

Mr. Stern: I object, your Honor, to that finding with respect to the statement "to grant an injunction or issue a declaratory judgment herein as prayed for by the plaintiffs." Frankly, the reason for my making the specific objection is that I did not get the full import of your Honor's opinion on the question of declaratory judgment in this case.

The Court: The second question that I took up was whether there may be a declaratory judgment that the defendants have violated the anti-trust laws as charged. Then I went on to say, in effect, that the obstacle to so doing, or perhaps I should say the point that gave me trouble and left me in doubt until yesterday as to what my decision should be, was the ruling of Mr. Justice Holmes. There were other decisions, chiefly of lower courts; but I concluded—and that was the only objection to a declaratory judgment, as I understood; wasn't that so?

Mr. Stern: Yes, your Honor.

The Court: I concluded after I had read and studied the stipulation and the order from which I have quoted, relating to the appointment and powers of the special master, that both sides had waived a jury in this case. I think my procedure gives you a right to review me on everything that can be urged against the declaratory judgment. I was in doubt about it until I finally became convinced that in the stipulation, particularly when coupled with the order made pursuant thereto, a jury had been waived.

Mr. Merritt: (Reading):

"9. The plaintiffs have no adequate remedy at law.

"10. The evidence introduced by defendants over plaintiffs' objections in an attempt to show alleged improper motives on the part of plaintiffs in bringing this action should be and hereby is disregarded as not tending to prove facts which are material and relevant and which constitute a proper defense herein.

"11. The evidence introduced by defendants in an attempt to prove facts which would constitute a defense that plaintiffs did not come into this Court herein with clean hands is, upon motion previously made by plaintiffs stricken out and disregarded as not tending to prove facts which constitute a proper defense herein.

"12. This case involves a controversy involving persons who are engaged in and who have direct or indirect interests in the same industry, trade, craft or occupation,— the making and installation of electrical products.

"13. Unlawful acts of defendants have been threatened and will be committed unless restrained, and have been committed and will be continued, unless restrained.

"14. Substantial and irreparable damage to plaintiffs' property has been caused and will follow.

"15. As to each item of relief sought, greater injury would be inflicted upon plaintiffs by the denial of relief than would be inflicted upon defendants by the granting of relief.

"16. The public officers charged with the duty to protect the plaintiffs' property are unable to furnish adequate protection.

"17. There is already pending on the law side of this Court another action entitled: 'The Clark Controller Company, et al. v. Local Union No. 3, et al.,' involving similar issues and some of the parties.

"18. The right of trial by jury is guaranteed to defendants by statute and decisions in actions at law, under the Sherman Anti-Trust Act, and in actions at law, under the Federal Anti-Trust Laws, unless waived.

"19. The activities of Local Union No. 3 in calling strikes on electrical operations conducted by the various City Departments for the purpose of obtaining employment for its construction members, were unreasonable and unlawful.

"20. The law recognizes that Local Union No. 3 has the right to determine whom it should admit as members, so long as that right is exercised reasonably and not arbitrarily.

"21. The law recognizes that Local Union No. 3 has the right to determine with whom it shall enter into collective bargaining agreements.

"22. The law recognizes that Local Union No. 3 has the right to enter into closed shop collective bargaining agreements.

"23. Plaintiffs are entitled to a declaratory judgment declaring that the combination and conspiracy and the acts done and being done in furtherance thereof all as set forth in the findings of fact herein are unlawful and contrary to the Act of Congress of July 2, 1920"—it should be 1890.

The Court: It should be 1890. That correction may be made by consent?

Mr. Merritt: Yes, your Honor.

Mr. Stern: Yes, sir.

The Court: In the fifth line of Finding 23 substitute "1890" for "1920".

Mr. Merritt (Continuing reading):

"23. Plaintiffs are entitled to a declaratory judgment declaring that the combination and conspiracy and the acts done and being done in furtherance thereof all as set forth in the findings of fact herein are unlawful and contrary to the Act of Congress of July 2, 1890 entitled an 'Act to Protect Trade and Commerce against Unlawful Restraints and Monopolies,' commonly known as the Sherman Anti-Trust Law, as amended and supplemented.

"24. Plaintiffs are entitled under the provisions of the Clayton Act (Act of October 15, 1914, 38 Stat. 737, 15 U.S.C.A. Sec. 26) to injunctive relief as prayed for by them in the amended complaint herein.

"25. An injunction should issue herein on behalf of plaintiffs which shall effectively dissolve the combination and conspiracy herein described and prevent any further and other acts in furtherance thereof.

"26. The plaintiffs are entitled to judgment against the defendants in accordance with the foregoing, together with costs and disbursements."

The Court: The objections to the conclusions of law are severally overruled. Now having passed on all the findings of fact and the conclusions of law and in various respects having modified them, the findings of fact and the conclusions of law as so modified are adopted by the court and made its findings of fact and conclusions of law.

There are several general matters I wish to mention.

During the course of the hearings it was stated that one of the defendants had died. Whether or not you have got your record straight on that I do not know. If not, I suggest that you consider clearing that in your final order or judgment.

I believe it was also stated that heretofore the National Electrical Manufacturers' Association had been eliminated from the action. Was an order taken on that?

Mr. Merritt: Yes.

The Court: All right. That does not have to be cleared then.

Mr. Merritt: And there were several others that have been· added.

The Court: Very well. I just call these things to your attention and leave them to you. That is all.

Now I put to you a practical question. I do not know that there is any settled practice on the point.

The findings and conclusions in the present case are rather lengthy. When an appeal is taken (as I assume will be taken), I think it probably would be very convenient for the appellate judges to have before them the findings and conclusions in the revised form. I do not know whether you have some plan in mind about that or not. I merely call it to your attention. Perhaps you can confer together as to how best to handle the matter. I suppose the original report of the master will have to go up in its original form; but scattered through the minutes there are various changes—some of them quite slight; others rather long—and, unless you have a complete, clean, revised copy, it would be a little burdensome on a judge to have to look up in the record what changes had been made.

One more thing. In the rules—I think it is Rule 65(b) [28 U.S.C.A. following section 723c]; I haven't my rules here—there is a provision which governs the form and contents of orders for injunctions. I suppose you will take that into account.

You can agree just to suit yourselves on settlement of the judgment. It will be signed by the Clerk; but before he signs it, it must come to the judge who will pass on and approve it. Therefore, just for the sake of the record, you may want to fix a length of time for notice of settlement. If something should happen so that you could not conveniently do it by the date prescribed, I will try to arrange it agreeably for you. Do you want to stipulate judgment to be settled on (say) 10, 20, 30 days' notice or whatever you want? Have you considered that?

Mr. Stern: We have not talked about it at all, your Honor.

The Court: Well, I assume you will have no trouble in agreeing. If you do not agree, you can advise me and I will adjust it.

(Counsel conferred off the record.)

Mr. Merritt: If your Honor please, Mr. Stern has got to be away for some time, and if it would be satisfactory to us he said he would be back anyway by July 1st.

(Colloquy off the record.)

The Court: Your absence will not delay Mr. Merritt in drawing his proposed papers?

Mr. Merritt: No.

The Court: You will not be losing any time by Mr. Stern's absence.

Mr. Merritt: We will go ahead with the papers, and then of course there is the question of costs, which we would like to settle among ourselves by agreement, if we can.

Mr. Stern: The question was, your Honor, if Mr. Merritt should draw the papers and I come back, how much time would I get on notice of settlement?

The Court: I asked you to agree on notice of settlement and said that if it turned out that something prevents you and you can't agree, then if you will come to me I'll settle it. You won't have any trouble about that. Do you want to put something in there just for the form, such as settle judgment on blank days' notice?

Mr. Merritt: Let us say settle on 10 days' notice.

Mr. Stern: I don't like that to be in the record, your Honor. I am not going to be here in 10 days. Ten days' notice from July 1st.

Mr. Merritt: Ten days' notice after your return.

Mr. Stern: Yes.

Mr. Merritt: But not later than July 1st. Is that all right?

Mr. Stern: You mean to return not later than July 1st?

Mr. Merritt: Yes.

Mr. Stern: Yes.