INTERNATIONAL PAPER COMPANY, et al., Plaintiff,

v.

The INHABITANTS OF THE TOWN OF JAY, et al., Defendants.

Civ. No. 87-0274-B.

United States District Court, D. Maine.

Sept. 15, 1987.

Charles S. Einsiedler, S. Mason Pratt, Jr., Pierce, Atwood, Portland, Me., for plaintiff.

Jeffrey T. Edwards, Michael J. Gentile, Preti, Flaherty, Portland, Me., for defendants.

Peter Brann, Asst. Atty. Gen., Augusta, Me., for State of Me.

## MEMORANDUM OF DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

GENE CARTER, District Judge.

### I. Procedural Background

The court has before it a motion for declaratory judgment and preliminary injunction filed by Plaintiffs on August 13, 1987. Plaintiffs seek to enjoin enforcement of three ordinances passed by Defendant, the Town of Jay, on August 11, 1987. Plaintiffs claim the ordinances violate federal and state constitutional principles, are preempted by federal and state labor law, and deliberately reduce Plaintiff International Paper's (hereinafter IP) bargaining strength in an ongoing labor dispute with its unions.

### II. Factual Background

On June 16, 1987, 1,200 members of the workforce at Plaintiff IP's Androscoggin Mill in Jay declared a strike. To continue operating the mill while the labor dispute was resolved, IP hired approximately 527 temporary replacement workers, and housed them in 52 mobile homes moved onto IP premises immediately before and after the strike.

On August 11, the Town of Jay passed three ordinances that impact directly on IP's use during the strike of temporary replacement workers and on-site temporary housing for those workers. The first, the Temporary Housing Ordinance[1] prohibits temporary or movable living quarters for 10 or more persons or consisting of 3 or more units except pursuant to and in accordance with the State of Maine's mobile home law codified in 10 M.R.S.A. § 9081 *et seq.* and the State of Maine's subdivision law codified in 30 M.R.S.A. § 4956."

Section 4(a): "A violation of the ordinance shall be punishable by a civil penalty of no less than $100 and no more than $2,500 for each

---

1. The relevant language of the ordinance is as follows:

Section 2(a): "No property owner shall create, construct or permit on his or its property living quarters for 10 or more persons or consisting of 3 or more units except pursuant to and in accordance with the State of Maine's subdivision law codified in 30 M.R.S.A. § 4956."

Section 2(b): "No property owner shall create, construct, or permit on his or its property

Jay property owners from constructing temporary or movable living quarters to house ten or more persons, except pursuant to Maine's Mobile Home Parks statute and Land Subdivisions statute.[2] Property owners are granted a compliance grace period equal to one-half the time their temporary or movable housing existed prior to the passage of the ordinance.[3] Post-grace period violations are punishable by fines of up to $2500 per day for each person housed in the temporary or movable quarters. Plaintiff IP is thus subject to a maximum $1.2 million in fines per day.

The second ordinance, the Professional Strikebreaker Ordinance, prohibits persons and corporations from hiring or offering for hire employees who have twice before been hired for jobs ordinarily performed by striking workers. Violations are subject to injunction in civil proceedings. The third, the Environmental Protection Ordinance, requires Jay officials to take extra care to enforce existing federal, state and local environmental protection laws, and creates a special fund to finance the increased enforcement efforts.

On August 13, 1987, Plaintiffs filed their request for declaratory judgment and a preliminary injunction. Plaintiffs claim, *inter alia*, that the ordinances violate federal Due Process and Equal Protection guarantees, impinge upon their constitutional right to travel interstate, violate their rights under the National Labor Relations Act and other federal labor laws, and

conflict with state housing and land use regulations. Oral arguments were heard Sept 1, 1987.[4]

For reasons set forth below, the Court enjoins enforcement of the Temporary Housing Ordinance, but denies injunctive relief as to the Strikebreaker and Environmental ordinances.

### III. Preliminary Issues

#### A. Standing

The Court finds that both IP and Plaintiffs Price and Teigen have alleged sufficient personal stakes in the outcome of this challenge to satisfy the constitutional prerequisites for standing. *United States ex rel. Weinberger v. Equifax, Inc.*, 434 U.S. 1035, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978). Plaintiffs Price and Teigen are temporary replacement workers living in the temporary housing on IP premises.

#### B. Ripeness

To determine ripeness, the Court assesses the fitness of the issues for judicial resolution and the hardship to the parties of withholding court consideration. *Pacific Gas & Electric v. Energy Resources Comm.*, 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983). Because Plaintiffs have acknowledged that they will be subject to the ordinances should the ordinances be found valid, the legality of the ordinances as applied to Plaintiffs turns almost exclusively on issues of law, not fact. Le-

---

unit or for each occupant, whichever is greater, and for each day of violation."

Section 6: "Any person engaged on the effective date of this ordinance in any activity which is hereby made unlawful shall be given a period of grace in which to comply with the ordinance equal to 50 percent of the time of conducting the activity prior to the effective date of this ordinance."

**2.** The Maine Mobile Home Parks Law, 10 M.R.S.A. § 9081 *et seq.*, requires all parcels with three or more mobile homes erected on them to be licensed by the state Manufactured Housing Board. The Board is given 30 days to determine whether to issue the license. The state subdivision law, 30 M.R.S.A. § 4956, requires municipal review and approval of all property owners' requests to divide tracts of land into three or more parcels within a five-year period.

Municipalities are authorized to hold public hearings, and have up to 60 days to grant or withhold approval.

**3.** IP began placing trailers on its property June 9, 1987. The majority of the trailers were in place when the strike began on June 16, 1987. The ordinances went into effect August 11, 1987, 63 days after the first trailer was placed on IP property, and 56 days after the majority of the trailers were in place. IP thus had between 28 and 31 days to comply with the ordinance, making the compliance date September 8 or 11.

**4.** At oral arguments, the parties agreed by stipulation, at the Court's request, that enforcement of the ordinances would be stayed until September 29, 1987, after the Court had had an opportunity to rule on the motion for preliminary injunction.

gal issues are uniquely within the purview of the Court, and thus are fit for judicial decision. *Pacific Gas & Electric*, 461 U.S. at 201, 103 S.Ct. at 1720.

Plaintiffs have further alleged they will endure significant hardship if the Court does not enjoin the enforcement of the ordinances while ruling on their legality. The Court finds these allegations, especially with respect to the Temporary Housing Ordinance, sufficient to support its conclusion that Plaintiffs' challenge is ripe for review.

The Court is not convinced, however, that Plaintiffs' challenge of the Strikebreaker Ordinance presents a live case and controversy sufficient to support the jurisdiction of this Court. The remedy for violation of the Strikebreaker Ordinance is civil injunction against the employment of "professional" strikebreakers. Defendants have not initiated an injunction action against Plaintiffs. Should they do so, Plaintiffs will have a full and fair opportunity to challenge the injunction through conventional judicial channels. Where the ordinance leaves open the opportunity for review, Plaintiffs' procedural due process rights are safeguarded, and enforcement of the ordinance causes no legal harm warranting the intervention of this Court. Thus, Plaintiff will suffer no hardship if the Court withholds an injunction of its enforcement. *Pacific Gas & Electric*, 461 U.S. at 201, 103 S.Ct. at 1720.

Further, the issues surrounding the validity of the Strikebreaker Ordinance as applied to Plaintiff are largely factual, not legal, and thus are not fit for judicial decision at this stage in the proceedings. Plaintiffs baldly allege that the Strikebreaker Ordinance was designed to cover the BE & K Corporation, with which Plaintiff IP has contracted for the services of 250 temporary replacement employees. Plaintiff IP alleges that, because BE & K has twice before provided replacement workers in labor disputes, and because all 250 BE & K employees are filling positions ordinarily held by striking workers, all BE & K employees will be discharged if the

ordinance is enforced, forcing IP to cease operations.

The Court is unwilling to enjoin enforcement of the ordinance of the basis of unsupported allegations of bad faith. Further, the Court is unwilling to rest on Plaintiff IP's sweeping interpretation of the ordinance. First, it is unclear that all BE & K employees are covered by the ordinance by virtue of their employment with that company. Second, there is no indication in the ordinance that workers found in violation of the ordinance will be discharged. Finally, IP has failed to allege with convincing clarity that its continued operation depends upon the services of BE & K, or that, should every BE & K employee actually covered by the ordinance be discharged, replacements are unavailable. Where the Court cannot ascertain the scope of and potential injury from the enforcement of the ordinance, the issues are not fit for judicial decision and, thus, the challenge is unripe. The Court will not enjoin enforcement against Plaintiff.

C. Exhaustion of Administrative Remedies

Defendants claim that, because Plaintiffs failed to seek review of the passage of the ordinances under Maine Rule of Civil Procedure 80B, Plaintiffs have failed to exhaust administrative remedies available to them and are barred from seeking relief under the Declaratory Judgment Act. Defendants' claim is unfounded. Maine Rule 80B merely provides a procedure for seeking review made available by statute; it does not create a right to review. Further, the review it addresses is judicial, not administrative. Field, McKusick & Wroth, Maine Civil Practice, Supplement § 80B.1. Plaintiffs were not required to proceed under Rule 80B before invoking the provisions of the Declaratory Judgment Act. Nor has the Court been informed of, or discovered itself, any other administrative remedies the Plaintiffs should have pursued before invoking the Act.

D. Need for an Evidentiary Hearing

██ During oral arguments, Defendants requested an evidentiary hearing on Plain-

tiffs' assertions that Defendants' deliberately passed the ordinances to reduce Plaintiff IP's ability to withstand and resolve the ongoing labor dispute. However, Defendants agreed to waive a hearing if the Court found it unnecessary to reach the motive issue in ruling on Plaintiffs' preliminary injunction request. Defendants argue strenuously that the voters' motives for enacting the ordinances are irrelevant, citing *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), and *McGinnis v. Royster*, 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973).

The Court finds it unnessary, at this stage in the proceedings, to reach the issue of whether Defendant Jay had improper motives for enacting the ordinances. Therefore, no evidentiary hearing is warranted. Moreover, Fed.R.Civ.Pro. 65(a) does not require the Court to hold an evidentiary hearing before issuing a preliminary injunction. *Pic Design Corp. v. Bearings Specialty Co.*, 436 F.2d 804, 808 (1st Cir.1971). While an evidentiary hearing may be required where facts are controverted, *Sims v. Greene*, 161 F.2d 87, 88–89 (3d Cir.1947), a court may rely on affidavits and pleadings alone where basic facts are not disputed. *Ross–Whitney Corp. v. Smith Kline & French Lab*, 207 F.2d 190, 198 (9th Cir.1953). See also 7 J. Moore, J. Lucas & K. Sinclair, Moore's Federal Practice § 65.04 at 65.61 (2d ed. 1986) ("A district court may, in the exercise of sound discretion, grant a preliminary injunction on the basis of affidavits.").

Because the basic facts surrounding the legality of the Temporary Housing Ordinance are not disputed in this case, and because an evidentiary hearing would unnecessarily delay the Court's decision on the preliminary injunction request, the Court will proceed without such a hearing. See *Asseo v. Pan American Grain Co., Inc.*, 805 F.2d 23, 26 (1st Cir.1986) (court should weigh all attendant factors, including the need for expedition and the character and objectives of the injunctive proceeding, to determine what type of evidence is appropriate).

### E. Applicability of the Norris–LaGuardia Act

■ Defendants claim that, because this case arises in the context of a labor dispute, the anti-injunctive provisions of the Norris–LaGuardia Act prohibit the Court from issuing a preliminary injunction. The Court finds the Norris–LaGuardia Act inapplicable to the instant case. The anti-injunction provisions of the Act are designed to protect workers in the exercise of their organized economic power, *Matter of Crowe & Associates, Inc.*, 713 F.2d 211 (6th Cir.1983), not to bolster management's strength against labor. The language of § 102 of the Act articulates this purpose, declaring that the "commonly helpless" worker "be free from the interference, restraint, or coercion of employers of labor" in organizing and bargaining for terms and conditions of employment. 29 U.S.C.A. § 102. The Court is unwilling to expand the scope of the Act when such an expansion would thwart Congress' clear intent to aid labor by proscribing the use *by management* of certain bargaining tactics.

Further, the Act is designed to regulate the employer-employee relationship, *Columbia River Packers Ass'n v. Hinton*, 315 U.S. 143, 62 S.Ct. 520, 86 L.Ed. 750 (1942), and to prevent management from invoking the federal courts' injunctive power to quell labor disturbances. *Communications Workers of America, AFL–CIO v. Western Elec. Co., Inc.*, 430 F.Supp. 969 (D.C.N.Y.1977). It does not bar the issuance of injunctions to prevent third parties from interfering with the labor disputes of others. *T.I.M.E.–DC v. N.Y. State Teamsters Conf. Pen. & Ret. Fund*, 580 F.Supp. 621, 628 n. 10 (N.D.N.Y.1984). Plaintiffs seek here to enjoin not the unions, but a third-party governmental entity; not the labor strike, but the enforcement of local ordinances passed allegedly as a result of strike-related occurrences. An injunction will not hamper the unions' ability to bargain and ultimately to resolve the dispute. The Norris–LaGuardia Act is inapplicable to the case at hand, and does not prohibit a preliminary injunction against the Defendants in these circumstances.

## IV. The Environmental Ordinance

■ Despite its power to do so, the Court is unwilling to enjoin the enforcement of the Environmental Ordinance. To be entitled to an injunction, Plaintiffs must show that they will suffer irreparable injury if the injunction is not granted, that such injury outweighs any harm that an injunction would inflict on Defendants, that Plaintiffs will likely succeed on the merits of their challenge, and that the public interest will not be adversely affected by the granting of an injunction. *Womens Community Health Center, Inc. v. Cohen*, 477 F.Supp. 542, 544 (D.Me.1979). Plaintiffs have failed to meet these criteria, and thus are not entitled to an injunction of the Environmental Ordinance.

Plaintiffs allege flatly that the ordinance was designed "to shut down or adversely affect the mill ... and to pressure IP into acceding to union demands." But Plaintiffs did not, and indeed cannot, allege that enforcement of the ordinance will cause them any special injury. The ordinance merely directs Jay officials to enforce more vigorously laws to which Plaintiffs are already subject. Enforcement of the ordinance poses no greater risk of adverse effect or undue pressure than existed prior to its passage.

Because Plaintiffs have failed to demonstrate that enforcement of the ordinance would inflict any injury, it is clear that Plaintiffs' interests in enjoining the enforcement of the ordinance cannot and do not outweigh Defendants' interests in enforcing the ordinance diligently. It is likewise clear that the public interest will not be compromised if Plaintiff's request for a preliminary injunction is refused and the ordinance enforced as passed. Indeed, the public interest will be served by conscientious enforcement of laws designed to safeguard the public health and environment.

Finally, Plaintiffs have demonstrated little likelihood of success on the merits of their challenge to the Environmental Ordinance. They have advanced no legal theory that entitles them to relief from its provisions, and allege no cognizable infringement upon their legal rights and remedies. Therefore, they have failed to satisfy the four criteria that would entitle them to a preliminary injunction, and have no grounds for relief from enforcement of the Environmental Ordinance.

## V. The Temporary Housing Ordinance

■ Plaintiffs have, however, alleged substantial potential injury from the enforcement of the Temporary Housing Ordinance. Plaintiffs Teigen and Price likely face eviction and the unlikely prospect of finding safe alternative housing in the Jay area. More critically from a constitutional perspective, Plaintiff IP faces up to $1.2 million in daily fines if it does not comply with the ordinance by the end of the applicable 30–day grace period.[5] Plaintiffs claim, and the Court finds, that the magnitude of these fines, coupled with the brevity of the compliance grace period, effectively deprive Plaintiff IP of the right to challenge the validity of the ordinance, a right guaranteed by the Due Process Clause. *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

In *Ex Parte Young*, the Supreme Court affirmed the injunction of Minnesota statutes that fixed maximum rail rates and imposed stiff fines and imprisonment for violations, but afforded rail companies insufficient opportunity to challenge the validity of the statutes before they were enforced. The Court held that where the penalties for violating a statute are "so severe as to intimidate the company and its officers from resorting to the courts to test the validity of the legislation, the result is the same as if the law in terms prohibited the company from seeking judicial construction of laws which deeply affect its rights." *Id.* at 147, 28 S.Ct. at 449.

---

5. The Temporary Housing Ordinance prescribes fines for violation of up to $2500 per day for each person housed in temporary or movable housing that violates its provisions. Because IP houses approximately 527 workers in temporary housing, it faces maximum penalties of approximately $1.2 million.

In the instant case, Plaintiff IP had approximately 30 days to comply with or challenge the validity of the Jay ordinances. Neither this Court nor any other could resolve a challenge of such depth in that time. IP thus had the Hobson's choice of challenging the ordinances and subjecting itself to burdensome fines, or foregoing its challenge and complying with an ordinance of questionable constitutional validity. *Ex Parte Young* permits this court to relieve Plaintiff of the burden of such a choice by enjoining enforcement pending the resolution of Plaintiff's challenge to the validity of this ordinance.

Cases subsequent to *Ex Parte Young* make its injunctive provisions mandatory. In *Oklahoma Operating Co. v. Love*, 252 U.S. 331, 40 S.Ct. 338, 64 L.Ed. 596 (1920), a unanimous U.S. Supreme Court affirmed the injunction of an Oklahoma statute prescribing laundromat rates and imposing stiff penalties for violations. The Court in *Love* recognized two rights in plaintiffs: to have penalties enjoined pending resolution of the challenge on the merits, where the legislation prescribing the penalties does not provide for review; and, even for unsuccessful challenges, to have penalties enjoined *pendente lite* where plaintiffs had reasonable grounds to raise them. *Id.* at 338, 40 S.Ct. at 340.

The instant case falls clearly within the *Love* rule. Plaintiff IP has asserted reasonable grounds to contest the validity of the Temporary Housing Ordinance and has taken every conceivable step to promote speedy resolution of the case. The onus of incurring fines under the ordinance is great enough, and the likelihood of judicial resolution within the grace period remote enough, to warrant judicial intervention. The Court is thus required under *Love* to enjoin the enforcement of the ordinance *pendente lite*.

Defendants argue that the grace period provided by the ordinance gives Plaintiffs a fair opportunity to challenge its validity before becoming subject to its penalties, and therefore satisfies Due Process requirements, making *Ex Parte Young* inapplicable. Defendants rely on *Brown &*

*Williamson v. Engman*, 527 F.2d 1115 (2d Cir.1975), in which the court refused to enjoin enforcement of penalties imposed by Federal Trade Commission rulings because plaintiffs failed to avail themselves of an opportunity to contest the rulings before seeking the injunction.

Defendants argument is faulty, however, because the 30–day grace period is insufficient to permit a final adjudication on the legality of the ordinance. The challenge cannot be resolved within the 30–day grace period afforded IP under the ordinance. IP brought its challenge promptly after the ordinances were passed; the ordinances were enacted August 11, 1987, and this action was filed two days later.

Moreover, *Brown & Williamson* is readily distinguishable on the facts. Plaintiffs in *Brown & Williamson* had stipulated to the validity of the rulings there in issue prior to launching their challenge. Further, the U.S. Supreme Court had declared the penalties imposed by the FTC rulings constitutional in an earlier case.

For the reasons set forth above, the Plaintiffs' Motion for Preliminary Injunction is hereby GRANTED with respect to the enforcement of the Temporary Housing Ordinance of the Town of Jay, a separate Preliminary Injunction to issue forthwith. The said motion is in all other respects hereby DENIED.

SO ORDERED.

### PRELIMINARY INJUNCTION

For the reasons set forth and on the facts found in this Court's Memorandum of Decision and Order Granting in Part and Denying in Part Plaintiffs' Motion for Preliminary Injunction, filed herein this date, it is hereby ORDERED that the Defendants, The Inhabitants of the Town of Jay, Maine, Willard Parker, Norman St. Pierre, Holly Dube, Randy Richards, Terry Bergeron, and Charles Noonan, and all persons, corporations, and entities in active concert or participation with them, be, and they are hereby, ENJOINED from enforcing against Plaintiffs, International Paper Company, William M. Rice, and John W. Tiegen, or any of them and/or their parties

in interest, or causing, allowing, or permitting the same to be done, a certain ordinance of the Town of Jay, a municipal corporation, entitled "A Temporary Housing Ordinance," enacted by the voters of the Town of Jay on August 11, 1987, until further order of this Court.