I.P.C. DISTRIBUTORS, Inc., a New York corporation, Plaintiff,

v.

CHICAGO MOVING PICTURE MACHINE OPERATORS UNION, LOCAL 110, OF THE I.A.T.S.E. AND M.P.M.O. OF THE UNITED STATES AND CANADA; Clarence Jalas; Eugene Atkinson; Louis Cleppe; and Dudley Howell, Defendants.

No. 55 C 147.

United States District Court N. D. Illinois, E. D. June 10, 1955.

Askow & Stevens, Chicago, Ill., for plaintiff.

Daniel D. Carmell, Chicago, Ill., for defendants.

SULLIVAN, District Judge.

The allegations of the complaint are that: Plaintiff is engaged in the business of distributing motion pictures to theaters for exhibition on a rental basis, and is the sole distributor of a motion picture called "Salt of the Earth". This film has been successfully exhibited in several cities, including New York City and San Francisco. On April 29, 1954, a license for its exhibition in Chicago was granted by the Commissioner of Police of this City. On April 20, 1954, and May 16, 1954, respectively, plaintiff entered into contracts with the Hyde Park and Cinema Annex Theaters in Chicago, providing that each of them would exhibit the film on named dates and would pay plaintiff specified rentals.

Approximately $5,500 was spent by plaintiff in preparation for these showings; and the expected income from them and from the normal runs in other theaters in this vicinity was over $100,000. Neither of these contracts was fulfilled because the Union directed the individual defendants who were operators at the Hyde Park and Cinema Annex not to project the film. This was part of a conspiracy among the defendants to prevent the showing of this film in the Chicago area, and they will continue to prevent its exhibition here unless restrained. In addition to the Chicago Moving Picture Machine Operators Union Local 110, the defendants are Jalas, its business agent, Atkinson, its president, and Cleppe and Howell, its members who were operators employed at the Hyde Park and Cinema Annex. Their power to prevent the showing of "Salt of the Earth" is derived from their contract with the Allied Theatres of Illinois, Inc. (representing all theater owners in the Chicago area), which provides that the theaters shall employ as operators only members of the Union in good standing. This refusal to supply operators to project "Salt of the Earth" and the threatened continuance of that refusal, caused plaintiff considerable damage which it here seeks to recover. It seeks damages for the breach of the two contracts specified; treble damages under the anti-trust Acts; and asks an injunction restraining the defendants from failing to furnish operators to project the film, from interfering with the performance of the named contracts, and from inducing or encouraging members of the Union in a refusal to show the motion picture "Salt of the Earth."

Such are the allegations of the complaint. The individual defendants, Jalas, Atkinson, Cleppe and Howell have filed answers. The Union has interposed a motion to dismiss, and the latter pleading is presently before me.

In support of this motion, the Union first argues that the complaint fails to state a cause of action for breach of contract, since the only breach alleged is that of a contract between the Union and Allied Theatres, Inc., to which plaintiff is a stranger. Defendant cites cases which correctly state the general rule as to third-party beneficiary contracts. This principle is set forth in Williston on Contracts (Rev.Ed., 1936), at page 1042. Postulating that the "great weight of American authority" allows recovery to a third-party beneficiary who is a "creditor beneficiary", Williston defines the latter term: "* * * if no intention to make a gift appears from the terms of the promise, and performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary." The plaintiff here falls within this definition: the performance by the Union of its contract to supply operators to Allied Theatres will satisfy the actual duty of the theatres to exhibit the plaintiff's films.

The contract between the Union and Allied Theatres, Inc., provides in part:

"5. In accordance with this agreement, the Union shall have the sole right to and will furnish all operators to the employer and the employer agrees to hire all such competent persons to perform the services."

In turn, the license agreement between the plaintiff and the individual theaters provides:

"The Exhibitor agrees to provide a completely staffed theater with all necessary personnel for its proper and efficient operation."

The theaters owed the plaintiff the further duty of exhibiting the picture and paying plaintiff the agreed rental. It is impossible to provide a "completely staffed theater" or to exhibit a motion picture, without the presence and active cooperation of an operator. The Union, therefore, in providing operators, is discharging a duty which the theater owes to the plaintiff distributor; and the performance of its contract with Allied Theatres is of "direct benefit" to the plaintiff. Further, this benefit was within the contemplation of the parties: it

is the function of theaters to exhibit films under a series of contracts with various distributors, a fact of course known to the Union when its contract to supply operators was made. Plaintiff has stated a cause of action as a third-party beneficiary. Carson Pirie Scott & Co. v. Parrett, 1941, 346 Ill. 252, 257, 178 N.E. 498, 81 A.L.R. 1262; Reconstruction Finance Corp. v. Bairstow, 7 Cir., 1944, 140 F.2d 353, 354; Phez Co. v. Salem Fruit Union, 1921, 103 Or. 514, 201 P. 222, 205 P. 970, 25 A.L.R. 1090; McKay v. Loews, 9 Cir., 1950, 182 F.2d 170.

The complaint purports to state a cause of action under Section 1 of the Sherman Act, 15 U.S.C.A. § 1. The defendant Union urges that it has failed to do so for a number of reasons. The first of these is that there has been no allegation of an injury to the public. Plaintiff's position is that the allegation that the public has been and will continue to be deprived of seeing the motion picture "Salt of the Earth" by the arbitrary censorship of the defendants, is sufficient to show an injury to the public. This theory is supported by William Goldman Theaters v. Loews, Inc., 3 Cir., 1945, 150 F.2d 738 (Id., 3 Cir., 164 F.2d 1021, certiorari denied 334 U.S. 811, 68 S.Ct. 1016, 92 L.Ed. 1742), an anti-trust case, which held that there is a public interest in being able to see first-run movies:

"We conclude that where a person has an available theatre to exhibit first-run pictures in a city of some two millions of people, where such business draws receipts in the many more millions of dollars each year, where the public has a live interest in the recreation, education and informative services which this new art form furnishes * * *." 150 F.2d 743.

Certainly the public has the same interest in being able to see motion pictures of its choice as it has in being able to read books and newspapers, and see plays and attend meetings, of its choice. This interest is not always protected; but whether or not this is one of those occasions on which it must be limited is not properly before me on motion to dismiss. For this purpose a sufficient allegation of public interest has been made.

Defendant contends that a cause of action has not been stated under the Sherman Act for the further reason that the Union is not engaged in interstate commerce, since its members are engaged locally in the showing of films. The important point is not whether defendants are so engaged, but whether their acts are "in restraint of trade or commerce among the several States." Title 15 U.S.C.A. § 1. The interstate transportation of film is "commerce" "among the several States", Binderup v. Pathe Exchange, 1923, 263 U.S. 291, 44 S.Ct. 96, 68 L.Ed. 308. and cited with approval, United States v. Shubert, 1955, 348 U.S. 222, 75 S.Ct. 277, 99 L.Ed. ——. It is alleged that this particular film was made in New Mexico, partly processed in New York, and the prints shipped from Detroit to Chicago. Certainly it is an item in interstate commerce, and its not being projected at the end of its journey is an interference with that commerce.

Defendant next argues that even if a cause of action has been stated under the Sherman Act, it is within the protection of one of several statutes which in some circumstances exempt labor unions from that Act. The first of these chronologically was the Clayton Act, Section 6 of which, Title 15 U.S.C.A. § 17, provides in part that "Nothing contained in the antitrust laws shall be construed * * * to forbid or restrain individual members of such (labor) organizations from lawfully carrying out the legitimate objects thereof." Section 20 of the same Act, Title 29 U.S.C.A. § 52, forbids the issuance of injunctions prohibiting activities such as strikes and boycotts "in any case between an employer and employees * * * growing out of, a dispute concerning terms or conditions of employment."

The interpretation of that Act by the courts is discussed in "Report of

the Attorney General's National Committee to Study the Anti Trust Laws", 1955, page 292, and in Allen Bradley Co. v. Local Union No. 3, 1944, 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939. Suffice it to say here that to clarify the statute, Congress in 1932 passed the Norris-LaGuardia Act, Title 29 U.S.C.A. § 105, which provides in essence that no court shall have power to issue an injunction "upon the ground that any of the persons participating or interested in a labor dispute * * * or are engaged in an unlawful * * * conspiracy". These statutes must be read as a "harmonizing" text, United States v. Local No. 3, supra, 325 U.S. at page 806, 65 S.Ct. 1533; United States v. Hutcheson, 1941, 312 U.S. 219, 231, 61 S.Ct. 463, 85 L.Ed. 788. So reading them, it appears that labor unions and their members are excepted from the anti-trust laws when they are "lawfully carrying out the legitimate objects" of such groups, and when they are engaged in a "labor dispute". It is urged that a "labor dispute" is a term covering more than merely disputes concerning hours, wages, and working conditions, New Negro Alliance v. Sanitary Grocer Co., 1937, 303 U.S. 552, 304 U.S. 542, 58 S. Ct. 703, 82 L.Ed. 1012, and that a dispute existed between the defendants and the theater owners as to the kind of pictures the defendants should be required to project. At this stage in the proceeding, any such dispute owes its existence solely to defendant's brief. On a motion to dismiss, it cannot be considered. The complaint alleges that defendants conspired to prevent a showing of a particular motion picture, and denies that a labor dispute existed. This is sufficient as against a motion to dismiss.

■ Defendant insists that so long as a labor union acts alone, without conspiring with an employer, it is automatically within the protection of the Norris-LaGuardia Act, citing Allen Bradley Co. v. Local Union No. 3, supra, and Hunt v. Crumboch, 325 U.S. 821, 65 S.Ct. 1545, 89 L.Ed. 1954 (1945). This argument overlooks an important qualification to the rule as it is stated in these and similar cases: to be exempt, a union must be acting in its self-interest and in pursuit of its legitimate objectives. It must be exercising the peaceful activities normally incident to achieving its usual and proper aims, United States v. Hutcheson, 1941, 312 U.S. 219, 232, 61 S.Ct. 463, 85 L.Ed. 788; Allen Bradley Co., supra, 325 U.S. at page 810, 65 S.Ct. 1533; New Broadcasting Co. v. Kehoe, D.C.N.Y.1950, 94 F.Supp. 113. Those aims are normally related to some aspect of the employer-employee relationship, and it has been said that this relationship must be the " 'matrix of the controversy.' " Ring v. Spina, 2 Cir., 1950, 148 F.2d 647, 651; Columbia River Packers Ass'n v. Hinton, 1942, 315 U.S. 143, 146, 62 S. Ct. 520, 86 L.Ed. 750; Hawaiian Tuna Packers v. International Longshoremen's and Warehousemen's Union, D.C.D.Hawaii 1947, 72 F.Supp. 562.

■ Whatever the legitimate and normal objectives of a labor union may be, they surely do not include a conspiracy to effectively stop one item of business; nor is the employer-employee relationship involved in any sense in such a conspiracy. The fact that it acts alone does not grant a union an unlimited license to escape the anti-trust laws.

■ Defendant's next general objection to the complaint is that the individual defendants Howell and Cleppe had a right to refuse to work at any time, and that a contract for personal services cannot be specifically enforced by injunction. Of course, it is true that an injunction cannot order a man to work. What it can do is to command that he refrain from engaging in unlawful activity; he may then work or not as he chooses. As the progenitor of this rule, Lumley v. Gye, 1 De Gex, M. & G. 604, remarked:

> "It is true that I have no means of compelling her to sing, but she has no cause for complaint if I compel her to abstain from the commission of an act she has bound her-

self not to do, and thus possibly cause her to fulfill her engagement."

 The complaint asks not for an injunction ordering these defendants to work, but for one restraining them from participating in an unlawful conspiracy. So long as they so refrain, whether these particular defendants work or do not work at particular jobs is a matter of indifference to the plaintiff.

 The parties are further at odds as to whether or not the complaint successfully states a cause of action under the Labor Management Relations Act of 1947, Title 29 U.S.C.A. § 187, which provides that it shall be unlawful for "any labor organization * * * to induce or encourage the employees of any employer to engage in * * * a concerted refusal in the course of their employment to use * * * or otherwise handle * * * any * * * articles, * * * where an object thereof is forcing or requiring any employer * * * to cease * * * dealing in the products of any other producer." It is alleged that defendants have, as part of a conspiracy, engaged in encouraging and carrying out a concerted refusal to handle the film "Salt of the Earth" with the object of forcing theater owners in the Chicago area to refrain from exhibiting this film. This is within the terms of the statute. The fact that no case precisely like it has been cited is of no importance; it is entirely reasonable to suppose that this set of facts has never arisen before.

 Another objection is that since the time for the performance of the contracts with the individual theaters has passed the question is moot and no injunction can be granted. The complaint does not rely on these contracts but alleges that defendants are continuing to, and will in the future, prevent the showing of "Salt of the Earth" in the Chicago area, causing irreparable loss for which the plaintiff has no adequate remedy at law. This is a sufficient allegation to support an injunction.

 Defendant's final point is that the dismissal of the complaint is required by various assertions in the answers of the individual defendants. The nature of these accusations in no way changes the basic rule that they cannot be considered on a motion to dismiss.

For all of the foregoing reasons, the motion to dismiss the complaint is denied.