SACRAMENTO COCA-COLA BOTTLING CO. Inc. and Fortuna Beverage Co. Inc., dba C-C Concession Co., Plaintiffs-appellants,

v.

CHAUFFEURS, TEAMSTERS AND HELPERS LOCAL NO. 150, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA, et al., Defendants-appellees.

No. 23569.

United States Court of Appeals, Ninth Circuit.

Feb. 26, 1971.

Morton B. Jackson, Los Angeles, Cal. (argued), of Hodge, Jackson, Kumler & Croskey, Los Angeles, Cal., for plaintiffs-appellants.

Robert Le Prohn, San Francisco, Cal. (argued), of Le Prohn & Le Prohn, San Francisco, Cal., for defendants-appellees.

Before CHAMBERS and MERRILL, Circuit Judges and CONTI, District Judge.*

CONTI, District Judge.

The plaintiffs in this action are the Sacramento Coca-Cola Bottling Co., a bottler and seller of soft drinks, and Fortuna Beverage Co. Inc. ("C-C"), a concessionaire and vendor of soft drinks. The principal defendants are the local, national and international organizations of the Teamsters Union.

The allegations are basically that due to threats, duress and other coercive measures exercised by the defendants upon the California State Fair officials, these officials issued a directive forbidding the sale of any Coca-Cola upon the fairgrounds during the 1966 State Fair.

Each of the plaintiffs in their second and third amended complaints, allege three separate claims, all of which arise

* Honorable Samuel Conti, United States District Judge, Northern District of California, sitting by designation.

from the same factual situation mentioned above:

(1) Claims 1 and 4 seek compensatory damages based upon a violation of Section 303(b) of the Labor Act. (Secondary boycott provisions.)

(2) Claims 2 and 5 seek compensatory and punitive damages based upon common law conspiracy to harass, annoy and injure the business and contractual relationships of plaintiffs.

(3) Claims 3 and 6 allege restraint of trade and competition in violation of Federal antitrust laws, specifically Sections 1 and 4 of the Sherman Act and Section 4 of the Clayton Act as amended by the Robinson-Patman Act.

The defendants moved to dismiss the 2nd and 5th and the 3rd and 6th claims under F.R.C.P. 12(b) (6). Defendants alleged that as to the common law conspiracy counts, the Federal Court lacked jurisdiction, and that, even if the court did have jurisdiction to hear the claim, the Federal Labor Act pre-empted the state law.

As to the antitrust claims, the defendants contended that labor unions are exempt from antitrust law under 15 U.S. C. Sec. 17.

In its first order, the District Court held:

(1) That it had jurisdiction to hear the conspiracy claims under the doctrine of pendent jurisdiction. United Mineworkers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966);

(2) But, that the common law conspiracy claims must be dismissed pursuant to the doctrine of Federal preemption;

(3) Upheld the antitrust claims on the ground the complaint affirmatively denied a labor dispute, which for the purpose of the motion was sufficient to deprive the defendant unions of their exemption. I.P.C. Distributors, Inc. v. Chicago Moving Picture Machine Operators Union, Local 110, 132 F.Supp. 294 (N.D.Ill.1955).

The court further suggested that it would accept an amendment to the complaint alleging that the defendant unions conspired with a non-labor group, thereby strengthening the antitrust claims by bringing them within the rule stated in Allen Bradley Co. v. Local Union No. 3, IBEW, 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939 (1945).

Pursuant to the comment of the court, the plaintiffs filed a third amended complaint in which it dropped the conspiracy claims and amended the antitrust claims by alleging a conspiracy between the defendants and the officials and agents of the State Fair.

Defendants then moved for judgment on the pleadings as to the antitrust claims, relying on the rules enunciated in Eastern Railroad President's Conference, et al. v. Noerr Motor Freight, et al., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) and United Mine Workers of America v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).

In its second order the court granted the defendants' motion.

Plaintiffs then moved for entry of final judgment upon the court's first and second orders, pursuant to Rule 54(b) of the F.R.C.P. The motion was granted and the court further ordered, pursuant to stipulation by the parties, a stay of further proceedings in the District Court, pending the disposition of this appeal.

## ISSUES

(1) Have the appellants waived their right to appeal the District Court's decision in its first order to dismiss the common law conspiracy claims by dropping such claims from the third amended complaint?

(2) Did the District Court correctly rely on *Noerr, supra,* and *Pennington, supra,* in granting the defendants' motion for judgment on the pleadings as to the antitrust claims?

We affirm as to the dismissal of the common law conspiracy claims and reverse as to the granting of judgment on

the pleadings with respect to the anti-trust claims.

## OPINION

*Waiver of right to appeal dismissal of conspiracy claims*

In Loux v. Rhay, 375 F.2d 55 (1967), this court held that the "amended complaint supersedes the original, the latter being treated thereafter as non-existent. (cases cited) By filing an amended complaint, plaintiff waives any error in the ruling to the original complaint." (cases cited)

Plaintiffs, in the present case, omitted the common law conspiracy claim from their third amended complaint. By so doing, they waived any right to attack on appeal the District Court's ruling dismissing these claims.

Plaintiffs contend that it "has long been the rule of Federal practice * * * that while the pleader who amends or pleads over waives his objections to the ruling of the court on indefiniteness, incompleteness or insufficiency, or mere technical defects in pleadings, he does not waive his exception to the ruling which strikes 'a vital blow to a substantial part' of his cause of action." Citing 3 Moore's Federal Practice 15.08(8).

Although this may state the general rule, it is not the rule which has been enunciated in this circuit. In *Loux, supra*, the District Court dismissed the original complaint on the ground that it failed to state a claim upon which relief could be granted. This ruling certainly struck a "vital blow" to the plaintiff's cause of action, and yet the court held that by amending his complaint the plaintiff waived any error in the court's ruling on the original complaint.

Further, we do not find that Leggett v. Montgomery Ward & Co., 10 Cir., 178 F.2d 436, sheds any new light on the matter.

Due to the above finding, it is unnecessary for us to discuss whether the Federal Labor Act pre-empts the state tort law under the facts of this case.

We, therefore, affirm the District Court's decision to dismiss the common law conspiracy claims.

*Noerr & Pennington*

In its first order, the District Court correctly denied the defendants' motion to dismiss the antitrust claims. Under 15 U.S.C. 17, labor unions, which are engaged in a "labor dispute" are, normally, exempt from antitrust liability. However, the plaintiffs in the present case have affirmatively alleged in their complaint that no such labor dispute exists. This allegation is sufficient to withstand a motion to dismiss. I.P.C. Distributors v. Chicago Moving Picture Machine Operators Union, 132 F.Supp. 294.

In its second order, however, the District Court granted the defendants' motion for judgment on the pleadings as to the antitrust claims. In so doing, the court relied on *Noerr, supra*, and *Pennington, supra*. These cases basically stand for the proposition that it is not in violation of the antitrust laws for two or more persons to attempt to influence the legislature or the executive with respect to the passage or enforcement of laws even though the intent of such persons may be to restrain trade.

In *Noerr*, the railroads and the truckers were involved in a dispute. The railroads initiated a publicity campaign with the purpose of influencing the legislature to pass anti-trucker legislation. It was alleged that the railroads had the intent of destroying the truckers as competitors in violation of the Sherman Act. The court stated:

"We think it equally clear that the Sherman Act does not prohibit two or more persons from associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly * * *" 365 U.S. at p. 136, 81 S.Ct. at p. 529.

"The right of the people to inform their representatives in government of their desires with respect to the pas-

sage or enforcement of laws cannot properly be made to depend upon their intent in doing so. It is neither unusual nor illegal for people to seek action on laws in the hope that they may bring about an advantage to themselves and a disadvantage to their competitors." At p. 139, 81 S. Ct. at p. 530.

In *Pennington,* there was an alleged effort by large mine operators and union officials to eliminate small companies by seeking to persuade the Secretary of Labor to set higher minimun wage standards for companies selling coal to the TVA on long-term contracts.

The court stated:

"Joint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition. Such conduct is not illegal, either standing alone or as a part of a broader scheme itself violative of the Sherman Act."

The basic thrust of these decisions is political. The Supreme Court felt that in a democratic society the people must feel free to communicate with their representatives in government with respect to "the passage or enforcement of laws." They must feel free to do so without regard to their intent and without the chilling effect of possible antitrust litigation.

The rule is subject to limits, however. As stated in Whitten, Inc. v. Paddock Pool Builders, Inc., 424 F.2d 25, 33 (1st Cir. 1970):

"Nevertheless, there remains the question of whether a particular attempt to influence a public official is the kind of political activity which *Noerr* protects. *Noerr* stressed the importance of free access to public officials vested with significant policy-making discretion. We doubt whether the Court, without expressing additional rationale, would have extended the *Noerr* umbrella to public officials engaged in purely commercial dealings when the case turned on other issues."

Further, it does not seem to this Court that the doctrines of *Noerr* and *Pennington* were intended to protect those who employ illegal means to influence their representatives in government. These doctrines were enunciated to see that the antitrust laws did not impede the free flow of communication between the people and the government. But there can be little reason to extend the special immunity of *Noerr* and *Pennington* to a type of "communication" which includes threats and other coercive measures. There is no room for such tactics in a democratic system.

In the case before us it was alleged that the defendant unions influenced the State Fair officials by means of threats, intimidation and other coercive measures. The doctrines of *Noerr* and *Pennington* are not, therefore, applicable.

The decision of the District Court granting the defendants' motion for judgment on the pleadings as to the antitrust claims is reversed.