**UNITED STATES of America,
Plaintiff,**

v.

**BETHLEHEM STEEL CORPORATION
and The Youngstown Sheet and
Tube Company, Defendant.**

United States District Court
S. D. New York.

Jan. 13, 1958.

Victor R. Hansen, Asst. Atty. Gen., Robert A. Bicks, First Asst. Atty. Gen., Daniel M. Friedman, Ephrain Jacobs, John T. Duffner, Allen A. Dobey, Donald F. Melchior, Dept. of Justice, Washington, D. C., for the United States.

Cravath, Swaine & Moore, New York City, Bruce Bromley, John H. Morse, New York City, of counsel, for defendant, Bethlehem Steel Corp.

Simpson, Thacher & Bartlett, New York City, Whitney North Seymour, Richard Jones, New York City, of counsel, and Baker, Hostetler & Patterson, Cleveland, Ohio, Howard F. Burns, Raymond T. Jackson, Cleveland, Ohio, of counsel, for defendant, Youngstown Sheet and Tube Co.

WEINFELD, District Judge.

This action is brought by the Government to enjoin a proposed merger between the defendants, Bethlehem Steel Corporation and The Youngstown Sheet and Tube Company on the ground that it would be in violation of Section 7 of the Clayton Act, as amended.[1] Specifically, the Government seeks to enjoin the consummation of a Reorganization

---

1. 64 Stat. 1125, 15 U.S.C.A. § 18.

Plan and Agreement dated December 11, 1956 under which the defendant Bethlehem is to acquire the assets and properties of the defendant Youngstown.

The case presents the problem of the interpretation and application of the 1950 amendment to Section 7 of the Clayton Act which has not yet been passed upon by the Supreme Court.[2] The companies involved, are two of the largest in an industry which is basic to our national economy.

The matter is now before the Court on the Government's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. The defendants in resisting the motion, urge that there are genuine issues as to material facts which require a trial.

Prior to the commencement of this suit, the defendants sought approval of the proposed merger from the Department of Justice.[3] In support of their application the defendants submitted detailed information and data pertaining to themselves, to other steel producers, and to the steel industry in general. The Government now relies in large part upon the data submitted to it, as supplemented by other data derived from recognized steel industry publications and reports. The facts have been collated and presented in voluminous affidavits, extensive exhibits and charts.

In the main, the defendants do not dispute the accuracy of the statistical material relied upon by the Government. However, they contend that this material, in and of itself, does not portray the full picture necessary for a determination of the competitive consequences of the proposed merger. They contend that the evidence submitted to the Department of Justice was in response to its request for specific information and that they did not thereby concede that this was the sole information relevant and material to the question of the legality of the proposed merger.

Prior to the oral argument of the motion which extended over two days, the Court studied and analyzed the affidavits, with their supporting exhibits and charts, and the briefs submitted by the parties. The Court concluded that many evidential facts, relevant to a decision of the ultimate issues, whether the case were ripe for summary disposition or whether a trial were required, are not open to challenge. These facts are principally of a statistical nature pertaining to capacity, production, and sales of the defendants, other steel producers and the industry at large. Accordingly, the Court in a conference prior to hearing argument on the motion directed each side to submit proposed findings of fact and conclusions of law based upon the affidavits, exhibits and charts offered for or against the motion, with comments upon the other's proposals indicating whether each such proposed finding was disputed or undisputed.[4] As anticipated, much of the evidence relied upon by the parties is not in dispute.

The Government claims that upon the unchallenged facts, the conclusion is compelled that the proposed merger comes within the proscription of Section 7 and accordingly no trial is necessary. However, the defendants urge that the inferences and conclusions which the Government contends flow from the undisputed facts and statistics, are not war-

2. United States v. E. I. du Pont, 353 U.S. 586, 77 S.Ct. 872, 1 L.Ed.2d 1057, involved pre-amendment § 7. The 1950 amendment has been considered by several other courts and the FTC. See e. g. Hamilton Watch Co. v. Benrus Watch Co., 2 Cir., 206 F.2d 738; American Crystal Sugar Co. v. Cuban-American Sugar Co., D.C.S.D.N.Y., 152 F.Supp. 387; Matter of Pillsbury Mills, Inc. FTC

Docket No. 6000; Matter of Crown Zellerbach Corp. FTC Docket No. 6180.

3. For an explanation of the Department of Justice "merger clearance procedure" see Barnes, Theory and Practice of Antitrust Administration. Address Jan. 1, 1954 before the Section on Antitrust Law of the New York State Bar Association.

4. The Government proposed 202 and the defendants 235 findings.

ranted and that other evidence needs to be considered before arriving at an over-all picture of the competitive consequences of the proposed acquisition.

Section 7 of the Clayton Act, provides in pertinent part as follows:

"[That] no corporation engaged in commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no corporation subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another corporation engaged also in commerce, where in any line of commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly".

■ In broad outline, the essential ultimate issues which the Court is called upon to determine and as to which the Government has the burden of proof in order to sustain its charge that the proposed merger comes within the prohibition of Section 7 are: the line or lines of commerce and the section or sections of the country in which the effects of the merger may be felt, or as phrased by the Supreme Court, the relevant market—"the area of effective competition"[5]—and whether the merger may substantially lessen competition or tend to create a monopoly.

The determination of these and other issues inherent in the case involves analysis of aspects of the iron and steel industry on a nationwide, regional and local level. The facts are complex and involved and require consideration of myriad details. While, as already noted, in many instances there is no dispute as to the underlying facts, the defendants urge inferences and findings contrary to those advocated by the Government and contend that only a trial will elucidate these matters.

■ The Court does not reach the classical summary judgment question of whether there is a genuine issue as to any material fact. Upon further close study of the record, briefs and argument of counsel and considering the size of the industry, the vast amount of factual material to be analyzed and reviewed in reaching a decision, the multitude of problems in the case, the likely impact of a decision upon the iron and steel industry in particular, and upon the economy of the country in general, and the admitted significance of a ruling under the amended Section 7 in view of differing contentions as to its construction, I am persuaded that a decision after trial will be the more desirable procedure in the matter. It will serve to bring into sharper focus certain issues of importance which have been obscured by the voluminous affidavits with their statements, counterstatements and alternative positions, and the conflicting conclusions which the parties contend are to be drawn from the multitude of facts and statistics presented.

Under all the circumstances the application of the summary judgment rule is questionable and the Court deems it sound judicial administration to permit a trial for such additional evidence and clarification as may be relevant. In doing so, it is guided by the judgment of the Supreme Court in a somewhat parallel matter, Kennedy v. Silas Mason Co., 334 U.S. 249, 256–257, 68 S.Ct. 1031, 1034, 92 L.Ed. 1347, where it said:

"We do not hold that in the form the controversy took in the District Court that tribunal lacked power or justification for applying the summary judgment procedure. But summary procedures, however salutary where issues are clear-cut and simple, present a treacherous record for deciding issues of far-flung import, on which this Court should draw inferences with caution from complicated courses of legislation, contracting and practice.

---

5. United States v. E. I. du Pont, 353 U.S. 586, 593, 77 S.Ct. 872, 877; Standard Oil Co. v. United States, 337 U.S. 293, 299, note 5, 69 S.Ct. 1051, 93 L.Ed. 1371.

"We consider it the part of good judicial administration to withhold decision of the ultimate questions involved in this case until this or another record shall present a more solid basis of findings based on litigation or on a comprehensive statement of agreed facts. While we might be able, on the present record, to reach a conclusion that would decide the case, it might well be found later to be lacking in the thoroughness that should precede judgment of this importance and which it is the purpose of the judicial process to provide".[6]

The Court, by this disposition, does not intend to suggest that the summary judgment rule is inapplicable to anti-trust cases simply because of their dimension. On the contrary, this Court heretofore has applied the rule and granted motions for summary judgment in such cases,[7] as have other courts.[8] The Court holds only that because of the unusual features of this case[9] a trial is warranted under the rationale of the Kennedy case.

In view of the proceedings already had the trial need not be the usual protracted one of the so-called "big-case".[10] Indeed, the parties are in agreement that the procedure adopted by the Court when it required them to take positions with respect to proposed findings of fact has not only greatly narrowed the issues to be considered upon a trial, but has substantially reduced the likely trial period. Originally it was estimated the trial would require from six months to one year; upon the argument of the present motion counsel stated their view that it could be concluded within six to eight weeks. The Court is not without hope that further cooperation on the part of counsel in pre-trial procedure will reduce even this estimate.

■ The matter is set for further pre-trial hearing on January 24, 1958 at 10:30 A.M. to continue from day to day until completed. At the pre-trial conference the parties will be called upon to stipulate the non-disputed evidential facts.

The trial proper is set for April 7, 1958 or for such earlier date the parties may stipulate.

The foregoing shall constitute the order of the Court.

6. See also Eccles v. Peoples Bank, 333 U.S. 426, 434, 68 S.Ct. 641, 92 L.Ed. 784, Professor Moore in commenting on the Kennedy case said its doctrine "is a salutary one and departure from it is apt to lead to a summary adjudication that does justice neither to the legal issues involved nor to the party against whom the judgment is rendered". 6 Moore, Federal Practice, 2169 (2d ed. 1953).

7. United States v. Bayer Co., D.C.S.D.N.Y., 135 F.Supp. 65; United States v. Sears, Roebuck & Co., D.C.S.D.N.Y., 111 F.Supp. 614.

8. United States v. United States Gypsum Co., 340 U.S. 76, 71 S.Ct. 160, 95 L.Ed. 89; Associated Press v. United States, 326 U.S. 1, 65 S.Ct. 1416, 89 L.Ed. 2013; United States v. General Instrument Co., D.C.N.J., 87 F.Supp. 157.

9. With respect to the cases cited in footnotes 7 and 8, supra, note should be taken of the fact that in the Bayer and General Instrument cases there were cross-motions for summary judgment and in the Sears Roebuck case the defendants admitted the facts advanced by the Government and did not request a trial. Both the Gypsum and Associated Press cases involved per se violations of the Sherman Act, 15 U.S.C.A. §§ 1–7, 15 note with no dispute as to the existence of the offending agreements.

10. See, McAllister, The Big Case: Procedural Problems in Anti-Trust Litigation, 64 Harv.L.Rev. 27 (1950); Procedure in Anti-Trust and Other Protracted Cases. A Report Adopted by the Judicial Conference of the United States, Sept. 26, 1951.