**UNITED STATES of America,**
**Plaintiff,**

v.

**UNITED SCENIC ARTISTS LOCAL 829 OF THE BROTHERHOOD OF PAINT-ERS, DECORATORS AND PAPER-HANGERS OF AMERICA, Defendant.**

United States District Court
S. D. New York.

May 8, 1961.

John D. Swartz, David H. Harris, Louis Perlmutter, Attys., Dept. of Justice, New York City, for plaintiff.

Erwin Feldman, New York City, for defendant.

IRVING R. KAUFMAN, District Judge.

### I. Nature of the Case

After almost four years of extensive discovery proceedings in this antitrust action, the government filed the instant motion for summary judgment; the defendant has filed a cross-motion for summary judgment seeking dismissal of the complaint.

The government contends, in essence, that the defendant union has combined and conspired with those of its members who entered into individual scenery and costume design contracts with producers of New York theatrical attractions [1] to

---

1. In 1957, when this action was commenced, the union apparently had an active membership of approximately 430. The great majority of these were regularly employed, on a weekly or daily basis, in the designing, construction, or painting of costumes and scenery. This action does not concern those who are thus situated; it involves only the approximately 40 members of the union

restrain interstate commerce in violation of Section 1 of the Sherman Act, 15 U.S. C.A. § 1. It is alleged that by means of the union's by-laws and rules, the union and these designers (called by the government "contracting designers") have established a number of restrictive practices which have operated to substantially limit competition in the designing of scenery and costumes for theatrical productions. It submits that (1) the union prohibits its members who engage in the painting and construction of scenery and the manufacture of costumes after the designs for the scenery and costumes have been created from performing any services in this connection unless these designs have been prepared by a designer who is a member of the union; (2) the union has fixed minimum prices and fees to be charged by designers for the design of scenery and costumes; (3) the costume designer for a particular production will not commence work on the designs until a contract for the scenery designs for that production has been entered into between the producer and a scenic designer who is a member of the union; and (4) the scenic designer for a production will not commence work until a contract for the costume designs for the production has been entered into between the producer and a costume designer who is a member of the union. The government seeks an injunction restraining the operation of these practices, and further seeks to prohibit any person from being a member of the union while acting as a so-called "contracting designer."

The defendant does not appear to deny that its by-laws and working rules provide for the practices complained of; its principal defense is that the costume and scenery designers are in fact employees of the theatrical producers, and are, therefore, legitimate subjects of unionization, and thus that these practices represent legitimate union activity. The defendant, therefore, takes the position that it is protected by the Clayton Act, 15 U.S.C.A. § 12 et seq., which confers immunity upon unions from the coverage of the Sherman Act, and by the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., which provides unions with similar immunity from injunctive relief. It argues also that the action should be dismissed because its subject matter is within the primary jurisdiction of the National Labor Relations Board, and that the activities complained of do not have the requisite effect on interstate commerce.

The government, on the other hand, urges that the scenery and costume designers involved in this action are in fact businessmen and independent contractors, rather than employees of the producers. It takes the position, therefore, that the union's conduct brings it within the doctrine of Allen Bradley Co. v. Local Union No. 3, 1945, 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939, whereby a union which combines or conspires with non-labor groups or persons to restrain interstate commerce loses its immunization under the antitrust laws.

The government cites a number of factors, which it claims are uncontradicted, in support of its contention that the designers are independent contractors. It maintains that (1) The designers maintain their own offices or studios where the designs are created; (2) They frequently employ other designers to assist in the preparation of the designs; (3) They retain title to the designs which are used by the producers; (4) They enter into individual contracts which are negotiated directly with the producer, and not through the union; and these contracts often contain provisions for royalty payments based on a percentage of profits; (5) The designers are not subject to any extensive control by the .

who enter into individual contracts with producers which call for the payment of a flat fee (and in some instances, in addition, a percentage of the production's profits) for the design of scenery and/or costumes for a particular production.

producer in the preparation of the designs; do not submit the designs for approval; and need not accede to alterations requested by the producers; (6) They may enter into contracts with different producers for different productions at the same time, limited only by considerations of time; (7) The producers do not deduct withholding tax or social security payments from the fees paid to the designers; (8) The designers report these fees on their income tax returns as income from business and not as salary or wages, and also deduct ordinary business expenses; and (9) The designers consider themselves to be independent contractors, rather than employees.

The defendant, however, insists that several of these factors have resulted from the historical development and inherent exigencies of the theatrical industry, rather than from individual choice of the designers. In this connection, it urges that the system of individual contracting, rather than yearly or monthly employment, is compelled by the nature of the industry, since productions are produced on an individual show rather than a yearly or monthly basis. It urges also that the designers create their designs in their own studios because no facilities are provided to them by the producers; that assistants are utilized because of the stringent time pressures in the industry; and that these assistants are often paid by the producer. With respect to the factor of control over the preparation of designs, the defendant submits that in practice the designers are subject to a large measure of control since they must conform their designs to the pre-existing requirements of the production, and must, therefore, follow the ideas of the producer and accede to any requests for alterations.

## II. Discussion

■ It is well settled in this circuit that summary judgment can be granted only if there is no genuine dispute as to any material fact, and that this require-

ment is to be strictly construed so as to ensure that factual issues will not be determined without the benefit of the truth-seeking procedures of a trial. Thus, in Colby v. Klune, 2 Cir., 1949, 178 F.2d 872, the court, in reversing the District Court's granting of a motion for summary judgment, 83 F.Supp. 159, pointed out that "Trial on oral testimony, with the opportunity to examine and cross-examine witnesses in open court, has often been acclaimed as one of the persistent, distinctive, and most valuable features of the common-law system." 178 F.2d at page 873. And, in Bozant v. Bank of New York, 2 Cir., 1946, 156 F.2d 787, 790, the court commented: "In conclusion we cannot avoid observing that the case is another mistaken effort to save time by an attempt to dispose of a complicated state of facts on motion for summary judgment." See also Subin v. Goldsmith, 2 Cir., 224 F.2d 753, certiorari denied 1955, 350 U.S. 883, 76 S.Ct. 136, 100 L.Ed. 779. Cf. Arnstein v. Porter, 2 Cir., 1946, 154 F.2d 464.

■ Moreover, even if the historical or evidential facts are not in dispute, summary judgment should not be granted in difficult and complex cases if the inferences which may be drawn from these facts are conflicting. The rationale behind this principle was expressed by Judge Weinfeld in United States v. Bethlehem Steel Corp., D.C.S.D.N.Y.1958, 157 F.Supp. 877:

"While, as already noted, in many instances there is no dispute as to the underlying facts, the defendants urge inferences and findings contrary to those advocated by the Government and contend that only a trial will elucidate these matters.

"The Court does not reach the classical summary judgment question of whether there is a genuine issue as to any material fact. * * * I am persuaded that a decision after trial will be the more desirable procedure in the matter. It will

serve to bring into sharper focus certain issues of importance which have been obscured by the voluminous affidavits with their statements, counter-statements and alternative positions, and the conflicting conclusions which the parties contend are to be drawn from the multitude of facts and statistics presented.

"Under all the circumstances the application of the summary judgment rule is questionable and the Court deems it sound judicial administration to permit a trial for such additional evidence and clarification as may be relevant." 157 F. Supp. at page 879.

And, in Kennedy v. Silas Mason Co., 1948, 334 U.S. 249, 256–257, 68 S.Ct. 1031, 1034, 92 L.Ed. 1347, the Supreme Court cautioned:

"But summary procedures, however salutary where issues are clearcut and simple, present a treacherous record for deciding issues of far-flung import * * *."

Cf. Foundry Services, Inc. v. Beneflux Corp., 2 Cir., 1953, 206 F.2d 214.

■ An application of these principles to the instant case makes it clear that summary judgment should not be granted. This is an antitrust case involving complex issues of fact and law which have not previously been precisely presented for determination. The resolution of these issues will have a considerable impact not only for the costume and scenery designers, but for the entire entertainment industry. I do not believe that novel issues of this import should properly be determined without a trial unless it is clear beyond a doubt that no facts are in dispute. This, I cannot say is the case here.

It is apparent that the employment question lies at the crux of the controversy. Indeed, the government concedes that if the designers are held to be employees of the producers, the complaint must be dismissed. On the other hand, if they are held to be independent contractors, it is highly probable that the government will prevail. See, e. g. Columbia River Packers Ass'n Co. v. Hinton, 1944, 315 U.S. 143, 62 S.Ct. 520, 86 L. Ed. 750; Gulf Coast Shrimpers & Oystermans Ass'n v. United States, 5 Cir., 1956, 236 F.2d 658; United States v. Fish Smokers Trade Council, D.C.S.D. N.Y.1960, 183 F.Supp. 227. The determination of this question involves the consideration of a myriad of factors and details. It would not be fair to either party for the court to attempt its resolution without the benefit of a comprehensive factual presentation of the industry. Although voluminous depositions,[2] exhibits and affidavits have been submitted in connection with these motions, they plainly do not supply the complete information nor bring into sharp focus all the elements essential for an informed and intelligent determination.

Thus, for example, there is a sharp factual dispute with respect to perhaps the most important factor in this determination—the nature of the relationship between the designers and the producers, and the extent and manner of control exercised in practice by the producers over the designers. The depositions and affidavits do not provide adequate information with regard to this matter and what does appear is far from conclusive. (Compare Deposition of William Eckart, pp. 355–359, and Deposition of Oliver Smith, pp. 623–626 with Deposition of Frederick B. Fox, pp. 426–27, and Affidavit of Howard Bay, pp. 19–20).[3]

2. The government took the depositions of nine of the so-called contracting designers. These depositions alone encompass 1176 pages. Of course, there is no assurance that these nine designers are in any way representative of the ap-

proximately 40 designers involved in the action.

3. For example, in the deposition of Oliver Smith the following colloquy appears:
"Q. Now, would you have the right,

Moreover, there is a clear conflict with respect to the inferences to be drawn from facts which are not in dispute. It does not seem to be disputed that the system of individual contracting between designers and producers is utilized, that the designs are created in the designer's studios, and that the designers frequently use the services of assistants. However, the government seeks to infer from these facts that the designers have consciously and intentionally assumed the status of independent businessmen; the defendant, on the other hand, contends that this working situation results from conditions created by the industry and beyond the control of the designers. The weight to be ascribed to these factors in determining whether the designers are employees or independent contractors cannot be ascertained without a full understanding of the nature and historical background of the industry. Suffice it to say that a trial will afford a more substantial basis upon which to form this understanding than is presently available.

In light of these considerations, I conclude that a trial which will provide a more complete understanding of the industry is necessary for a resolution of the issues in this case, and thus that summary judgment cannot be granted. This does not mean that the present motions have been wasted effort on the part of the parties. Indeed, they have served to narrow and pinpoint the issues remaining for decision. Thus, it is clear that

the validity of the defense raised by the union based on the Clayton and Norris-LaGuardia Act exemptions is primarily dependent upon a resolution of the employment issue in its favor. See, e. g. Columbia River Packers Ass'n Co. v. Hinton, supra; United States v. Fish Smokers Trade Council, supra. And the defendant has stipulated, during the oral argument of these motions, that if the designers are in fact independent contractors, its defense premised on the primary jurisdiction of the National Labor Relations Board is inapplicable.

Moreover, it is equally apparent that the work done by the designers involved has an important and substantial effect on interstate commerce. It cannot seriously be denied that costumes and scenery are integral and necessary elements of theatrical productions; neither can it be denied that these productions, which have both try-outs and road-shows in states other than New York, are in interstate commerce. United States v. Shubert, 1955, 348 U.S. 222, 75 S.Ct. 277, 99 L.Ed. 279. See also United States v. Women's Sportswear Mfg. Ass'n, 1949, 336 U.S. 460, 69 S.Ct. 714, 93 L.Ed. 805.

Therefore, the trial need not be unduly protracted. The evidence to be adduced should properly be directed almost exclusively to the employment issue, and, in this connection, especially to the areas of dispute outlined above.

The motions for summary judgment are denied. So ordered.

if you so desired, to discard or refuse to accept the suggestions of the director? A. I would have the right to * * *."

By contrast, in the deposition of Frederick B. Fox, the following colloquy appears:

"Q. Mr. Fox, just how much authority does a producer have over the performance of your work in designing a scene or a set of scenes? A. He is your employer. He has full rights as an employer to determine what you do."

* * * * *

"Q. Are there any occasions when you disagree with that producer in connection with his designs? A. There have been occasions.

"Q. On those occasions have you had to conform to his wishes? A. Yes, I have had to.

"Q. Or can you insist that the scene remain as you originally designed it? A. He has full authority to order that it be changed."