**Joseph CARROLL et al., Plaintiffs,**

v.

**AMERICAN FEDERATION OF MUSICIANS OF the UNITED STATES AND CANADA et al., Defendants.**

United States District Court
S. D. New York.
May 7, 1964.

See also D.C., 33 F.R.D. 353.

---

4. See also Wade v. Rogala, 270 F.2d 280 (3rd Cir. 1961).

**536**

Godfrey P. Schmidt, New York City, for plaintiffs.

McGoldrick, Dannett, Horowitz & Golub, New York City, Emanuel Dannett, Herbert D. Schwartzman, Eugene Mittelman, New York City, of counsel, for defendants American Federation of Musicians of United States and Canada, Herman D. Kenin, Stanley Ballard and George V. Clancy.

Ashe & Rifkin, New York City, David I. Ashe, New York City, of counsel, for defendants Associated Musicians of Greater New York, Local 802, Al Manuti, Max L. Arons and Hi Jaffe.

LEVET, District Judge.

These consolidated actions are brought by members and former members of the defendant unions charging the defendants with having unlawfully combined with non-labor groups to restrain interstate commerce, all in violation of the anti-trust laws. Basically, the plaintiffs allege that they and others, as orchestra

leaders, are employers of the instrumentalists (sidemen) in their orchestras and that their continued membership in the union and the imposition of the union regulations upon them effectuates a conspiracy between a labor and a non-labor group to restrain interstate commerce. The predatory acts alleged are the fixing of prices for musical services; the refusal to bargain collectively concerning wage scales; the requirement of employment quotas; compelling orchestra leaders to become and remain members of the unions and the licensing and regulation of booking agents. Defendants presently move for summary judgment.

The basis of the defendants' motions is that "[t]here is job competition and other economic inter-relationship between leaders (such as the plaintiffs who may be employers) with other leaders who are employees; between leaders and subleaders who are admittedly employees; between leaders who play instruments and sidemen who are admittedly employees and who likewise play instruments." These economic interrelationships are said to justify the regulations the defendants impose and their requirement that orchestra leaders such as the plaintiffs become and remain members of the defendant-unions.

■ The amenability of labor unions to the anti-trust laws has had a long and tortuous history from its first judicial encounter in Loewe v. Lawlor, 208 U.S. 274, 28 S.Ct. 301, 52 L.Ed. 488 (1908) (the Danbury Hatters case); the Congressional attempt to turn this course of decision in Sections 6 and 20 of the Clayton Act, 38 Stat. 731 (1914), 15 U.S.C. § 17 and 38 Stat. 738 (1914), as amended, 29 U.S.C. § 52; the construc-

tion of the Clayton Act in Duplex Printing Press Co. v. Deering, 254 U.S. 443, 41 S.Ct. 172, 65 L.Ed. 349 (1921) and Bedford Cut Stone Co. v. Journeymen Stone Cutters Ass'n, 274 U.S. 37, 47 S.Ct. 522, 71 L.Ed. 916 (1927); again, the Congressional response in the Norris-LaGuardia Act of 1932, 47 Stat. 70 (1932), as amended, 29 U.S.C. §§ 101–110, 113–115; and the eventual acceptance of labor's immunity in Apex Hosiery Co. v. Leader, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311 (1940) and United States v. Hutcheson, 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788 (1941). For the present purposes, it is possible to set forth in a single annotated sentence the applicable law. A labor union is exempted from both the injunctive[1] and damage[2] provisions of the anti-trust laws for all its activities in a bona fide labor dispute[3] save in those instances when, in the absence of job or wage competition or the existence of an economic interrelationship significantly effecting other legitimate union interests[4] it combines with non-labor groups to effect some direct commercial restraint.[5]

■ We are concerned here with the exception to labor's immunity implicit in United States v. Hutcheson, 312 U.S. 219, 232, 61 S.Ct. 463, 85 L.Ed. 788 (1941) and made explicit in Allen Bradley Co. v. Local Union No. 3, Int'l Broth. of Elec. Workers, 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939 (1945)—labor's combination with a non-labor group. The initial, and perhaps sole issue in this case, is whether the plaintiffs, assuming they are employers and independent contractors, are such a non-labor group as to prevent the union from having a legitimate interest in their regulation. For upon the resolution of this issue depends

---

1. United States v. Hutcheson, 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788 (1941).

2. Apex Hosiery Co. v. Leader, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311 (1940).

3. As defined in 15 U.S.C. § 17; 29 U.S.C. § 52; 29 U.S.C. § 113.

4. Los Angeles Meat and Provision Drivers Union, Local 626 v. United States, 371 U.S. 94, 83 S.Ct. 162, 9 L.Ed.2d 150 (1962).

5. Allen Bradley Co. v. Local Union No. 3, Int'l Broth. of Elec. Workers, 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939 (1945).

the existence of a "labor dispute" and the applicability of the Allen-Bradley exception. See fn. 2 of Justice Goldberg's concurring opinion in the Meat Drivers case, 371 U.S. at 107–108, 83 S.Ct. at 169–170.

The answer must come from a resolution of the contrary attractions of Milk Wagon Drivers' Union Local No. 753, Intern. Broth. of Teamsters, Chauffeurs, Stablemen and Helpers of America v. Lake Valley Farm Prods., Inc., 311 U.S. 91, 61 S.Ct. 122, 85 L.Ed. 63 (1940); Bakery and Pastry Drivers and Helpers Local 802 v. Wohl, 315 U.S. 769, 62 S.Ct. 816, 86 L.Ed. 1178 (1942); Local 24 of Int'l Broth. of Teamsters v. Oliver, 358 U.S. 283, 79 S.Ct. 297, 3 L.Ed.2d 312 (1959) on the one hand and Los Angeles Meat and Provision Drivers Union Local 626 v. United States, 371 U.S. 94, 83 S.Ct. 162, 9 L.Ed.2d 150 (1962); United States v. Fish Smokers Trade Council, Inc., 183 F.Supp. 227 (S.D.N.Y.1960) on the other. The criterion is whether there exists between the independent contractors and the employees who are a proper subject of unionization such "job or wage competition or economic interrelationship of any kind," 371 U.S. at 103, 83 S.Ct. at 167, as to make it a legitimate union objective in seeking as members the self-employed entrepreneurs.

The employment relationship in this industry is anything but simple and is one of the "[m]yriad forms of service relationship, with infinite and subtle variations in terms of employment, [which] blanket the nation's economy." N.L.R.B. v. Hearst Publications, Inc., 322 U.S. 111, 126, 64 S.Ct. 851, 858, 88 L.Ed. 1170 (1944). The affidavits submitted by the defendants establish beyond doubt that there is a substantial similarity between the duties performed by the plaintiffs, who act always as leaders and never as sidemen, and the vast majority of the union's membership who may occasional-

ly act as a leader or subleader.[6] But the substantial overlapping of physical duties is not in and of itself determinative. There was a substantial similarity in the duties performed by the "jobbers" and the union members in both the Meat Drivers and Fish Smokers cases. In the Meat Drivers case the processors of yellow grease, the employers of the union members, obtained raw grease either directly from large restaurants or by purchase from the independent grease peddlers. When the purchases were made directly from the restaurants, the processors' union drivers transported the raw grease to the factories. When the purchases were made from the peddlers, they obtained and transported the grease to the factories. The duties of both the independent grease peddlers and the union members bore substantial similarity.

What is disputed in the affidavits is the precise nature and mode of the job and wage competition or other economic interrelationship between orchestra leaders who are independent contractors and the vast majority of the membership of the union. The plaintiffs contend that their success depends upon their name, reputation and style, factors singularly absent in the subleaders or those members of the union who only occasionally act as leaders.

■ There is no indication in this case that the independent contractor is being used in the industry to substitute for normal employees as there was in both the Milk Wagon and Bakery Drivers cases. There are, however, indications in the affidavits that orchestra-leader-employers are being treated as a separate entity within the local as was the situation in both the Meat Drivers and Fish Smokers cases. (See Shard Aff., pp. 2, 4.) It is the resolution of these factual issues and, more importantly, the inferences to be drawn from a full disclosure of all the relevant facts that re-

6. A substitute leader appointed by the orchestra leaders such as the plaintiffs to act for the leader in his absence.

quire a denial of the defendants' motion for summary judgment.

However desirable it may be to dispose of this controversy, the motion for summary judgment fails to provide the proper vehicle. "But summary procedures, however salutary where issues are clear-cut and simple, present a treacherous record for deciding issues of far-flung import * * *." Kennedy v. Silas Mason Co., 334 U.S. 249, 256–257, 68 S.Ct. 1031, 1034, 92 L.Ed. 1347 (1948). Summary judgment has been the subject of numerous opinions in this circuit. It would not be an overstatement to say that the requirement that there be no genuine dispute as to any material facts has been strictly construed in this circuit to ensure that factual issues will not be determined without the truth-seeking procedures of a trial. See, e. g., Empire Electronics Co. v. United States, 311 F.2d 175 (2d Cir. 1962) Colby v. Klune, 178 F.2d 872 (2d Cir. 1949); Arnstein v. Porter, 154 F.2d 464 (2d Cir. 1946); Doehler Metal Furniture Co. v. United States, 149 F.2d 130, 135 (2d Cir. 1945); Bozant v. Bank of New York, 156 F.2d 787, 790 (2d Cir. 1946): "* * * we cannot avoid observing that the case is another mistaken effort to save time by an attempt to dispose of a complicated state of facts on motion for summary judgment." When precisely an "issue of material fact" is presented has also been the subject of scholarly critique, see, e. g., Asbill and Snell, Summary Judgment under the Federal Rules—When an Issue of Fact is Presented, 51 Mich.L.Rev. 1143 (1953); Note—Summary Judgment Under Federal Rule of Civil Procedure 56— A Need for a Clarifying Amendment, 48 Iowa L.Rev. 453 (1962), and the end result has been that "[o]ne struggles in vain for any verbal formula that will supply a ready touchstone." Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (Cardozo, J.).

Yet, "even if the historical or evidential facts are not in dispute, summary judgment should not be granted in difficult and complex cases if the inferences which may be drawn from these facts are conflicting." United States v. United Scenic Artists, 27 F.R.D. 499 (S.D.N.Y. 1961), which involved a situation where the United States brought a civil antitrust action against the defendant union alleging violation of Section 1 of the Sherman Act because of the presence in the union of "contracting designers" who, in many ways, operated in the same manner as the plaintiff in this case. The issues raised were the same as here; the precise nature of the employment relationship and the applicability of the Allen-Bradley exception. See also Braddick v. Federation of Shorthand Reporters, 115 F.Supp. 550 (S.D.N.Y.1953). Similarly, in the Empire Electronics case, supra, both parties had moved for summary judgment which was granted by the district court. The Court of Appeals reversed holding, 311 F.2d at 179, that while the evidentiary facts were not disputed, the inferences of fact to be drawn from them were, thus necessitating the denial of the motion for summary judgment. Recently, the inappropriateness of summary judgment in the anti-trust field has been commented upon by the Supreme Court, see White Motor Co. v. United States, 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738 (1962); Simpson v. Union Oil Co., 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964); United States v. Continental Oil Co., 377 U.S. 161, 84 S.Ct. 1155, 12 L.Ed.2d 213 (1964).

■ The issues in this case are important and can have important impact on the musicians' profession. The majority of the employment opportunities for the approximately 280,000 members of the American Federation of Musicians occur in the club date or single engagement field. It is in this field that the plaintiffs perform the majority of their services Issues of this importance should not be decided on summary judgment where, while the underlying facts

may not be disputed, the inferences and findings necessary to resolve the case are in substantial dispute. "In view of the complex and, apparently, *sui generis* character of the employment relationships in this industry, we think these issues can be better decided after developments of the facts at a trial." Carroll v. American Fed. of Musicians, 310 F.2d 325, 327 (2d Cir. 1962).[7]

■ As an alternate contention, the defendants urge that the conduct challenged in the complaints is arguably an unfair labor practice placing primary and exclusive jurisdiction of this dispute with the National Labor Relations Board. In fact, the plaintiffs have themselves filed an entire barrage of complaints with the Board concerning the conduct here involved. The preemption cases beginning with San Diego Bldg. Trades Council, Millmen's Union Local 2020 v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) through Hattiesburg Bldg. & Trades Council v. Broome, decided on April 27, 1964, 377 U.S. 126, 84 S.Ct. 1156, 12 L.Ed.2d 172, are somewhat difficult to reconcile. While many of the charges made in the complaint are certainly arguably unfair labor practices, the fact remains that should the plaintiffs be able to show that the union's conduct is violative of the antitrust laws, the preemption issue as to the major issue in this case would disappear. See Jewel Tea Co. v. Local 189, Amalgamated Meat Cutters, 274 F.2d 217 (7th Cir. 1960);

United States v. United Scenic Artists, 27 F.R.D. 499, 503 (S.D.N.Y.1961).

For the foregoing reasons the defendants' motion for summary judgment is denied.

So ordered.

---

7. By so ruling, I do not mean to express any approbation of the plaintiffs' 9(g) statement which does much to confirm Judge Friendly's prescient statement that the plaintiffs should be required "to winnow out of the mass of their grievances the particular facts deemed by them to bring the case within the pull of Allen Bradley * * *." Carroll, supra, 310 F.2d at 327 (2d Cir. 1962). Of the 60 named items perhaps 10% are material issues in this litigation. Many of the alleged violations of the anti-trust laws in the complaint are quite obviously without merit, as, for example, the violations alleged because of the union regulations requiring minimum number of men for the orchestras, see United States v. Carrozzo, 37 F.Supp. 191 (N.D.Ill.), aff'd United States v. International Hod Carriers' etc., 313 U.S. 539, 61 S.Ct. 839, 85 L.Ed. 1508 (1941); United States v. American Fed. of Musicians, 47 F. Supp. 304 (N.D.Ill.1942), aff'd 318 U.S. 741, 63 S.Ct. 665, 87 L.Ed. 1120 (1943) or the failure to collectively bargain, Hunt v. Crumboch, 325 U.S. 821, 65 S. Ct. 1545, 89 L.Ed. 1954 (1945). Since I am Rule 2 Judge of this case, I see no useful purpose in entering partial summary judgment, Fed.R.Civ.P. 56(d), since this matter can best be dealt with in the pre-trial order.