HOME BOX OFFICE, INC., Plaintiff,

v.

DIRECTORS GUILD OF AMERICA, INC., Robert B. Aldrich, Michael H. Franklin, Ernest Ricca and Glenn Gumpel, Defendants.

No. 78 Civ. 3095.

United States District Court, S. D. New York.

Aug. 15, 1979.

Proskauer, Rose, Goetz & Mendelsohn, New York City, for plaintiff; by George G. Gallantz, Bettina B. Plevan, Mark Walfish, Mathew E. Hoffman, New York City, of counsel.

Dickstein, Shapiro & Morin, New York City, for defendants; by Sidney Dickstein, William W. Osborne, Jr., Washington, D. C., of counsel.

## MEMORANDUM AND ORDER

SOFAER, District Judge.

Home Box Office, Inc. ("HBO") is a Delaware corporation that acquires and produces live and videotape television programs for transmission to cable and pay television systems, and master antenna systems. Integral and indispensable to this business are the services of directors and associate directors. Plaintiff is of the view that the law allows it to negotiate and contract with so called "free-lance" directors and associate directors—those directors who are not regular staff members of television producers such as CBS, NBC, and ABC. But plaintiff claims it is unable to negotiate with free-lance directors because of a conspiracy in violation of the Sherman Act, 15 U.S.C. §§ 1 & 2, by the defendants, the Directors Guild of America, Inc. (Guild), and its officers. Plaintiff seeks a declaration that the conspiracy is unlawful and an injunction against acts which would prevent plaintiff from negotiating with free-lance directors. In addition, plaintiff seeks treble damages, costs and attorneys' fees.

Defendants concede they engage in acts that would violate the antitrust laws but for their status as a labor union. The Guild's membership consists of some 1500 directors, as well as numerous associate directors, stage managers, assistant directors, production assistants and unit production managers. As a labor organization, it has sought through collective bargaining to improve the working conditions and terms of employment of all its members. Defendants admit to having sought to reach a contract with HBO, consistent with the so-called Freelance Live and Tape Television

Agreement of 1978, signed by over 300 production companies. They admit to having ordered their members to stop dealing with HBO after negotiations for an agreement collapsed. But these activities are all permissible and protected, they contend, by the statutory exemptions for actions in pursuance of lawful union objections. Clayton Act, 15 U.S.C. § 17; 29 U.S.C. § 52; Norris-LaGuardia Act, 29 U.S.C. § 101. Defendants contend, in fact, that no genuine issue of material fact exists concerning the exemption of their activities from the antitrust laws. They move for summary judgment under F.R.Civ.P. 56.

■ Defendants' motion must be denied. Factual uncertainties exist as to whether material and manageable distinctions can be made between free-lance and in-house directors; and the record is insufficiently developed to permit a conclusion as to whether including free-lance directors in the Guild's bargaining unit would be permissible even if they should be deemed independent contractors.

■ The Guild is incontestably a union, and HBO implicitly concedes its activities are exempt from the antitrust laws to the extent that the Guild bargains on behalf of directors employed in-house by producers. A labor union may lose its protection from antitrust liability, however, by combining with a non-labor group to restrain trade. See Los Angeles Meat and Provision Drivers Union v. United States, 371 U.S. 94, 101, 83 S.Ct. 162, 9 L.Ed.2d 150 (1962). HBO argues that free-lance (as opposed to in-house) directors are in fact independent contractors although many of them are members of the Guild. If free-lance directors are not in the employer-employee relationship with producers such as HBO, then the Guild may lose its exemption from the antitrust laws by attempting to bargain in their behalf. The test for determining whether the free-lance directors are employees or independent contractors turns on the nature and extent of control retained by producers over the work and judgment

of free-lance directors. *See, e. g., NLRB v. United Insurance Co.,* 390 U.S. 254, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968); *Herald Co. v. NLRB,* 444 F.2d 430, 432–33 (2d Cir.), *cert. denied,* 404 U.S. 990, 92 S.Ct. 532, 30 L.Ed.2d 541 (1971); *Taylor v. Local No. 7, Int'l Union of Journeymen Horseshoers,* 353 F.2d 593, 596 (4th Cir.), *cert. denied,* 384 U.S. 969, 86 S.Ct. 1859, 16 L.Ed.2d 681 (1965). This test necessitates an examination of the particulars of the relationship involved, making summary judgment a difficult if not inappropriate vehicle for adjudication. *See, e. g., United States v. United Scenic Artists Local 829,* 27 F.R.D. 499, 502 (S.D.N.Y.1961) (Kaufman, J.); *Julien v. Society of Stage Directors and Choreographers, Inc.,* 1975—2 Trade Cases ¶ 60,541 (S.D.N.Y.1975) (Stewart, J.).

Among the factors alleged by HBO to exist and to indicate that free-lance directors are independent contractors are: their retention by HBO on a "piecework" basis (both parties are free to decide whether to contract with each other for each program); payment of flat fees per program to free-lancers, regardless of the time each program takes to complete, and regardless of whether the program is ever completed or used; the capacity and practice of free-lance directors simultaneously to accept work from more than one producer; the right of free-lance directors to select and supervise their entire technical crews (which tend to work with the same directors repeatedly); the high degree of control exercised by free-lance directors over hours, technique, equipment, and personnel in developing programs; the special skills and experience free-lance directors must possess; the fact that free-lance directors often obtain a proprietary interest in the programs they develop; and the allegedly common practice of free-lance directors to incorporate and operate as independent businesses. *See* Fuchs Affidavit, Opposition of HBO to Motion for Summary Judgment; *see generally Bernstein v. Universal Pictures, Inc.,* 517 F.2d 976 (2d Cir. 1975); *Ring v. Spina,* 148 F.2d 647 (2d Cir. 1945); *Taylor, supra; Young & Rubicam Int'l, Inc.,* 226 NLRB 1271 (1976); *American Guild of Musical Artists,* 157 NLRB 735 (1966).

These allegations, supported by affidavit, are sufficient to raise genuine issues of material fact. Defendants dispute this, pointing out that the Fuchs affidavit is repeatedly qualified by adjectives such as "often," "sometimes," "most," and that HBO fails to identify a single free-lance director by name who performs functions significantly different from those performed by in-house directors. Defendants claim that in fact free-lance and in-house directors perform essentially the same functions, and to prove this they quote from the Guild's description of the job function of all its directors, both in-house and free-lance. Yet, defendants cannot effectively refute HBO's claims by simply pointing to qualifications in the Fuchs affidavit, or by quoting from a general (and self-laudatory) description in the union's constitution.

Defendants properly point out that free-lance directors might lawfully be included in the Guild's bargaining unit. Independent contractors may be included in a bargaining unit, defendants argue, where they are in competition for jobs and wages with the Guild's in-house directors. But *American Federation of Musicians v. Carroll,* 391 U.S. 99, 88 S.Ct. 1562, 20 L.Ed.2d 460 (1968), cannot confidently be read so broadly, given its special circumstances, especially the fact that the orchestra leaders there actually played as musicians with their dance bands. Furthermore, this Court, at least, lacks the confidence to apply a decision as unique and difficult as *Carroll* without the benefit of a full record, as Judge Levet insisted on having in *Carroll* itself. *Carroll v. American Federation of Musicians,* 35 F.R.D. 535 (S.D. N.Y.1964). Finally, even if *Carroll* provides a clear-cut rule such as the one for which defendants contend, the record thus far fails to establish that the free-lance directors HBO wishes to hire do in fact compete with in-house directors. It may well be that the Guild will succeed in showing the competition it claims. But the issue must be tried.

The motion for summary judgment is denied. The parties are hereby ordered to complete all discovery within sixty days of this order, and to submit a joint pre-trial order no later than fifteen days thereafter. The case will then be placed on the ready-trial calendar, to be reached as soon as possible on no less than twenty-four hours notice.

SO ORDERED.